## BUTTS et al. v. COLLINS.

No. 20922. Opinion Filed June 7, 1932.

H. O. Thurman (A. M. Gee, of counsel), for plaintiffs in error.

Holliman, Bailey & Brewer, for defendant in error.

KORNEGAY, J. This is a proceeding in error to review the action of the district court of Washington county in rendering a judgment against the petitioners for $1,200, on a three-fourths verdict of the jury, for damages alleged to have occurred by reason of the negligence of the plaintiffs in error in handling a passenger automobile, at an intersection between an ordinary dirt highway and the pavement, running generally north and south, about three miles north of Ramona, in Washington county, about 3 o'clock in the afternoon of July 9, 1928.

At all stages of the proceeding, both in the pleadings and at the conclusion of the evidence of both sides, the defendants below denied any negligence on their part, as plaintiffs in error assign as error the giving of instructions 1, 3, 4, 5, 8, 17, and 18, and the overruling of the demurrers of the plaintiffs in error to the evidence of the defendant in error, and rendition of judgment on the verdict.

The petition avers that the plaintiff, in a car of his own, driven by his wife, on the 9th of July, 1928, was driving along the Bartlesville-Ramona paved highway at not

more than 30 miles per hour, and the car was being handled in a prudent and careful manner, and the negligence charging part is as follows:

"* * * That as plaintiff's automobile reached the point above described, the defendant, A. L. Butts, was driving a Buick coupe automobile north on the east side of the middle line of said paved highway immediately in front of this plaintiff: that the said A. L. Butts was driving the said automobile at a slow rate of speed at approximately two or three miles per hour, and had come almost to a complete stop, at which time the driver of plaintiff's automobile honked the horn of said car twice and swung out to the left side of the said paved highway to go around the automobile being driven by the said A. L. Butts, that when plaintiff's car swung out as aforesaid, to pass the said Buick automobile, the said A. L. Butts, without any sign, signal or warning, carelessly, negligently and wrongfully and without regard to the safety and rights of this plaintiff, turned his said automobile abruptly to the left squarely across said paved highway, and coming to a complete stop directly in front of this plaintiff's approaching automobile, and thereby suddenly obstructing the said paved highway, and by reason of the defendant suddenly obstructing said highway, the driver of plaintiff's automobile was unable to stop his said car by reason of the close proximity of said automobiles, and in order to avoid a direct collision with the said Buick automobile, the driver of plaintiff's car turned said automobile abruptly to the left, and by reason thereof the left wheels of plaintiff's said automobile left the paved highway and his said automobile swung around the side of the said Buick automobile, and in an effort of the driver of plaintiff's automobile to swing said car back on to the paved highway in order to avoid an imminent crash into the embankment of said highway, the said Studebaker automobile swung to the right and turned completely over, throwing this plaintiff violently out of said automobile and upon the pavement of said highway, and thereby injuring this plaintiff and his said automobile.

'Plaintiff further says that at the time he received the injuries aforesaid, the defendant the Mid-Kansas Oil & Gas Company was the owner of the Buick automobile being driven by the defendant A. L. Butts, and the said A. L. Butts was then and there an employee, agent, and servant of the Mid-Kansas Oil & Gas Company, and was acting as the agent and servant of the said Mid-Kansas Oil & Gas Company in operating said automobile at said time and place, and was about the business of the said Mid-Kansas Oil & Gas Company, the exact nature and character of said business being unknown to this plaintiff, and said A. L. Butts was

acting within the scope of his authority and employment."

The petition then described the injuries that he received, which were very severe, and laid his personal damages at $5,000. It averred the automobile that was destroyed was worth $600, and asked for judgment for $5,600.

After some preliminary motions, the plaintiff in error Butts filed an answer, which was a general denial, and averred the speed of the car of plaintiff below was 50 miles per hour, and by reason thereof, when the plaintiff's driver turned out, she lost control of the car. There was a general allegation that the negligence of the driver was the cause of the accident, as follows:

"For further defense this defendant alleges and states that at the time of the accident complained of, the plaintiff and his wife and agent driving the plaintiff in plaintiff's Studebaker automobile, were guilty of negligence which either caused or contributed to the accident complained of in this, to wit, that the plaintiff and his said agent failed to have said Studebaker automobile under control, and failed to exercise ordinary care in the driving of said automobile as hereinabove set out."

Reply by general denial was made to this answer. The oil company, in its answer, denied each and every allegation of the petition.

Trial was had before a jury. The plaintiff testified, and so did his wife, and the plaintiff also introduced an eyewitness of the transaction. In the pleadings the plaintiff did not state the full facts. The facts were that there was a truck, piled up with about 100 bushels of oats, that was between the car of the plaintiff and the car of the defendants below, traveling in the same direction. The truck was not traveling very fast, and the defendant below had just gone by the truck and got upon the proper side of the road, which was a double track paved road and when the plaintiff sought to go by the truck the car of the defendant was out of sight of the plaintiff as the truck was between them. In plain view was a crossing, by a section line road of the paved highway. Just the angle at which it crossed, the evidence does not disclose, but it was an obtuse angle and much greater than a right angle at the left side of the road where the plaintiff below sought to go by the car that the plaintiff in error Butts was driving.

From the evidence, the car of the plaintiffs in error was under full control, and had it not been, the car of the defendant in error.

the plaintiff below, would have run into it, as it was in the intersection and endeavoring to turn to the left to take the intersection road. The truck, slowing down, was preparing to do the same at the time that the plaintiff below undertook to go by it, except that the truck had not reached the intersection, but the car of the plaintiffs in error had. Apparently the manager of the car of the plaintiff below took no precaution towards getting the car under control as she approached the intersection, though until she moved out from behind the truck the view in front of the truck was necessarily obstructed by reason of the width of the truck and the load of grain piled up on it. Just a few moments before, she had seen the car of the plaintiffs in error go by the truck and disappear from sight.

As a result of turning to the left at the intersection, the car of the plaintiff below missed hitting the car of the plaintiffs in error, which came to a stop during the progress of it, and in undertaking to avoid a culvert that was about 200 feet from the intersection in a northwesterly direction, it was necessary for the car of the plaintiffs in error to get back to the pavement. In making the turn to get back on to the pavement, the car upset and turned over, demolishing the top and almost destroying the car. When it was over the car was on the east side of the highway facing in the opposite direction but standing on its wheels about 130 feet from the intersection.

On the admitted facts we cannot see where there was any negligence on the part of the driver of the front car. At page 42, the testimony of the owner of the car, who was plaintiff below, Mr. Collins, is as follows:

"Q. Do you know Lawrence Fletcher? A. I do now. Q. Did you see him on this day? A. Yes, sir. Q. What was he doing? A. He was hauling a large load of sack grain on a truck. Q. Which direction was he driving? A. He was traveling north. Q. And you were traveling north? A. Yes, sir. Q. Mr. Butts was traveling north? A. Yes, sir. Q. Tell what happened when you got to the point where this accident occurred. A. Well, this man, Butts, passed the truck a few yards ahead of me _ _ Q. About how far ahead of you was he? A. I would say possibly 75 to 100 yards. Q. Seventy-five to a hundred yards? A. Approximately. Q. Approximately what rate of speed was he going? A. I would say in the neighborhood of 30 miles, about the same speed I was traveling. Q. After he passed this truck—was it moving or had it stopped? A. It was moving and it was well over on the pavement, moving slow. Q. You were about

75 to a 100 yards behind Mr. Butts? A. Yes, sir. Q. After he passed the truck, what did you do? A. I pulled over to pass the truck also, after he pulled in front of the truck I pulled over, or rather my wife did, pulled out to go around the truck also. Q. Was she blowing the horn? A. She blew the horn before she started around the truck and also after she pulled up along side of the truck. Q. When you pulled up along the side of the truck, did you see Mr. Butts' car? A. Yes, sir. Q. How far ahead of you was it then? A. I would say possibly 75 feet ahead of the truck. Q. Seventy-five feet ahead of the truck? A. Yes, he had slowed down till he was going practically as slow as the truck was traveling. Q. And he was about 75 feet ahead of the truck— Well, what did your wife do when you pulled up along the side of the truck? A. She sounded the horn again. Q. Do you have an independent recollection of that? A. Yes, sir. Q. Now, just tell in your own way what happened after that. A. All right, just at that point Mr. Butts attempted to turn to the left, stopping directly on the pavement. Q. Right on the pavement? A. In front of our automobile. Q. Did he stop directly on the pavement? A. Yes, sir. Q. Now, you stated that the car was crossway on this paved road? A. It was not directly crossways. Q. When Mr. Butts' car stopped, which way was it headed? A. Diagonally across the pavement. Q. Was it more to the right or to the left or about equally in the center? A. Just about equally in the center of the pavement. Q. Right in the center of the road? A. Yes, sir; as near as I can say. Q. Now, at the time his car pulled over in the center of the pavement, at the time it had practically the same as stopped, where was your car? A. I was just passing the truck, I would say we were well up to the front of the truck. Q. When it came to a complete stop where were you? A. I was several feet ahead of the truck at that time. Q. How far would you say you were from the Butts car when it came to a complete stop? A. I would say 30 feet. Q. And you were traveling how fast? A. Approximately 30 miles. Q. With your wife driving? A. Yes, sir."

He testified as to the extent of the injuries to himself, and how the car turned over after the car wheels skidded. The testimony of the driver of the car of the plaintiff below did not help matters. Neither did the suggestions of the attorneys, and neither did the cross-examination of the plaintiff below help. At page 56, plaintiff says:

"A. Yes, the truck was slowing down; I didn't know at that time that it was slowing down. I found out later that it was, but it was running very slow. Q. And practically at the same time Mr. Butts' car passed the truck your car was turning out to go

around the truck also? A. I was directly behind the truck at the time he passed it. Q. Did you ever lose sight of Mr. Butts' car? A. Yes. Q. When you lost sight of Mr. Butts' car on account of the loaded truck being ahead of you, did you slow up any? A. We was driving possibly 30 miles an hour, somewhere in the neighborhood of 30 miles, and his car went out of sight then we pulled over to the left. Q. When the other car pulled out of sight, you couldn't see it, could you? A. No, sir. Q. You didn't know where it was? A. I suppose it was going on down the pavement. Q. But you didn't know where it was, did you? A. No, sir. Q. Did you slow down any? A. Possibly, some."

At page 67, the driver, the plaintiff's wife testified:

"Q. When you passed the truck, when you got even with the truck, did you then see Mr. Butts' car? A. I couldn't see it until I was even with it. Q. Well, when you came up even with it, did you then see it? A. Yes. Q. Where was the Butts' car at that time? A. Oh, I judge—well, about a fourth of a block ahead of me, maybe not that much. Q. Assuming that a block is 300 feet long, that would put him in the neighborhood of 75 feet ahead of you? A. I don't think it was that far. Q. Was it as far as from where you are sitting to the end of the room, or farther? A. It wasn't that far. Q. What side of the road was the Butts car on when you came up even with the truck and saw it, was it on the right side of the road or the left side? A. It was on the right side. Q. Was there a cross-road there? A. There? Q. Was there a crossroad ahead of you to the north? A. A dirt crossroad. Q. There was? A. Yes. Q. Mrs. Collins, where was the Butts car when you first saw it after passing the truck with reference to this dirt crossroad, had the Butts car come up even with the dirt road, or was it still south of it, and if so, how far south? A. I don't know, it wasn't where anyone would think he would be turning off. Q. I'm not talking about that now, what I want to know is how far south of this dirt road was the Butts car when you first saw it. A. Presumably at the crossroad. Q. About to the crossroad? A. Yes."

At page 70, in response to a question as to how fast she was traveling when the Butts' car started to turn to the left, she says:

"A. I couldn't tell exactly; not more than 25 miles an hour. Q. What did you do then, Mrs. Collins; tell just what happened. A. Well, I honked my horn, and he just turned to the left without making any signal, and I tried to do what naturally anyone would do, to keep from running into his car. The only way there was out of it was to leave the pavement; naturally I did the only thing

I could do, I pulled off the pavement and went around him and when I tried to get back on the pavement without going into the ditch or into a culvert that was there, the car turned over."

At page 72 she says:

"Q. What caused the car to turn over, Mrs. Collins? A. Well, the necessity of either running into the culvert by staying on the side of the road or getting back on the road. Q. And in turning back onto the pavement, that's what caused the turn over? A. Yes, in the short space there was to get on the pavement. Q. And it was necessary to get back on the pavement by reason of the culvert? A. Or go into it; yes, I had no choice."

The truck driver was offered by the plaintiff below. At page 75, he says:

"Q. You were going to turn at the same place Mr. Butts attempted to turn? A. I was making the same turn he was. Q. When did Mr. Butts pass your automobile? A. Just a little ways before we come to the intersection Q. At what rate of speed, in your judgment, was he traveling at the time he passed your car? A. He wasn't going more than 10 or 15 miles an hour. Q. Did you see Mr. Collins on that occasion? A. On that day, you mean? Q. Yes. A. Yes, sir. Q. Did his car pass your car? A. Yes, sir. Q. When, with reference to the time that Mr. Butts' car passed your car? A. Just a short time. Q. Just immediately after the Butts car passed you? A. Just a second or two afterwards, just a little bit. Q. At the time Mr. Butts passed your car, where was the Butts' car with reference to the intersection? A. It was right on the intersection when this man's car passed me, Mr. Butts' car was right on the intersection at that time. Q. Just going into the intersection? A. He was still on the pavement, he had just started to make his turn. Q. Well, you just go ahead and tell what happened from the time the Collins car came up even with your truck until the turn over? A. I was driving along there slow. aiming to make my turn when Mr. Butts went around me and drove around to the right of the road ahead of me and slowed up, the thought went through my mind, 'What's he gonna do?' It's very seldom that a car turns off on a dirt road along there. I thought, 'What's he stopping for and still staying on the pavement?' and then he started to make the turn. I seen him give the signal that he was going to turn off just at the time the other car came around me, he either had to hit the man in the other car or go around him. he left the pavement and went around him. the man stopped his car just about the middle of the road just about at that black mark. This man cut around him and when he come back on to the pavement he upset. I don't

know just exactly how far he went before the car turned over, but it turned plum over and lit on its feet, headed back in the opposite direction, southeast, only in the ditch."

He stated that after the accident happened, he yanked his car to the right of the road and stopped. He stated that the Butts car was going four or five miles an hour when he reached the intersection, and the Collins car was going 30 or 35 when it went by him, and that when Butts started to make the turn on the dirt road Butts gave a signal by putting his hand out to the side of the car, and the witness could see it plainly, and stated that then the Collins car was close to him and had started around and was about at his side. There was further testimony of Butts and parties as to the talk and as to the injuries and, as to the measurements. There was also testimony as to the burned rubber marks that appeared on the pavement, which were about 80 or 90 feet from the intersection, and the car after turning over and heading back was about 130 feet from the intersection and on the right side of the pavement. Some question got into the case about the company car being insured.

The instructions of the court cover 20 pages of the record and embody a statement of the pleadings rather than a charge bearing on matters that were established in the evidence. It failed to charge upon the respective duties of the parties at intersections, and of the relative rights of the car ahead and the one behind at an intersection. However, we think the evidence in this case fails to show any liability of the plaintiff in error, and that the law applicable at intersections had been declared in some former decisions of this court, and that tested by the requirements there should have been a peremptory instruction for the defendants at the conclusion of the evidence. The amount recovered was small when the personal injury is considered, and was by three-fourths of the jury. There appears to be a complete absence of neglect of duty on the part of the driver of the front car in this case. See the case of Smith v. Clark, 125 Okla. 18, 256 P. 36. The present case, however, is stronger against recovery than that, as the plaintiff below approached a crossing with the view obstructed at more than 15 miles per hour, the limit prescribed by chapter 16, Session Laws of 1923.

We think that as applied to this case every consideration required the plaintiff not to undertake to pass. The view of the road was obstructed by the loaded truck. The loaded truck was slowing down. The other car had just passed it, slowing down. It was at a crossing that apparently was in full view, where people were liable to be coming in the cross direction, and along which either one of the cars in front was liable to be going. The whereabouts of the car which had just passed the truck were unknown to the driver of the second car. Under the circumstances, the plaintiff below could scarcely have expected, at that time and place, a clear road, and it appears to us that the negligence of the driver was patent to all reasonable men. See Berry on Automobiles (6th Ed.) sections 222 and 223, and cases cited.

It is very evident from the rubber marks on the road and the way the car skidded, that the driver of the car that turned over was either making a very quick turn to avoid the culvert that was ahead, or perhaps had thrown on the brakes, causing the rubber marks to be left on the pavement, after observing, while she was going at a high rate of speed, the culvert ahead, necessitating her getting off the shoulder.

The verdict is therefore set aside, and the cause is reversed. It is very evident, as all actors in the case have testified, that the facts on a second trial could not vary from what they had been on the first trial. The court below is accordingly directed to enter judgment for plaintiff in error, all at the cost of defendant in error.

RILEY, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. McNEILL, J., dissents. LESTER, C. J., and CLARK, V. C. J., absent.

McNEILL, J. (dissenting). I am unable to concur in the views expressed in the majority opinion. This was an action to recover damages on account of the negligent acts of defendants. Plaintiff alleges that he was riding in an automobile driven by his wife on the public highway at a reasonable and legal rate of speed, not in excess of 30 miles per hour, and was operating the same in a prudent and careful manner; that the defendant A. L. Butts, an employee of the Mid-Kansas Oil & Gas Company, was driving a Buick coupe, owned by said company, in a northerly direction on the east side of the middle line of the paved highwas immediately in front of plaintiff; that plaintiff was driving in the same direction and honked the horn of his car twice and swung out to the left side of the paved highway to go around the automobile being

driven by the said Butts; that when plaintiff's car swung out as aforesaid to pass said Buick automobile, the said Butts, without any sign, signal, or warning, carelessly, negligently, and wrongfully, without regard to the safety and rights of this plaintiff. turned his said automobile abruptly to the left squarely across said paved highway, and coming to a complete stop directly in front of plaintiff's approaching automobile, thereby suddenly obstructed said paved highway; that by reason of the defendant suddenly obstructing said highway, the driver of plaintiff's automobile was unable to stop his said car by reason of the close proximity of said automobile, and was obliged to abruptly turn to the left, and in swinging back on to the paved highway received the damages therein complained of. These were specific acts of negligence. Proof of any single act of negligence, provided such negligence was the direct and proximate cause of the injuries complained of, was sufficient to submit such issue to the jury. The evidence was in conflict. It appears that the defendant and the plaintiff were following a truck; that the defendant Butts had passed around the truck, and that plaintiff, while passing the truck, observed for the first time that the defendant Butts had turned westerly at or near an intersection of the road, the highway running in a northwesterly direction and the road intersecting therewith running due east and west.

In my opinion, the rule announced in the case of Smith v. Clark, 125 Okla. 18, 256 P. 36, should be adhered to, though the facts in that case being, in part, similar to the facts in the instant case. In that case the driver of an automobile, following an empty truck, proceeded to pass the same when the driver of the truck without any warning turned the truck to the left, and as plaintiff approached, plaintiff's car ran into the left side of the rear end of the truck. The rule announced in that case in reference to turning to the left of the highway without signaling is set forth in the fourth paragraph of the syllabus, and is as follows:

"Where two automobiles were traveling in the same direction along a public highway, and the rear car attempted to pass the first one just as it was turning to the left out of the highway, and was injured, the driver of the front car was not guilty of negligence in turning to the left without signaling, if he did not know of the approach of the rear car."

This court in that case quotes with approval the syllabus in the case of Government Street Lumber Co. v. Ollinger (Ala.) 94 South. 177, as follows:

"When two automobiles are being driven along a public road in the same direction, the driver of the front car owes no duty to the rear car except to use the road in the usual way, and until he has been made aware of it, by signal or otherwise, he may assume, either that there is no other automobile in his rear, or that, being there, it is under such control as not to interfere with his free use of the road in any lawful manner.

"Where two automobiles are traveling the public road in the same direction, the one ahead has the superior right, and it is only on request or equivalent notice that he must turn aside so as to leave sufficient room for the rear car to pass.

"A driver of an automobile on a public road, upon approaching another automobile from the rear, must look out for the man ahead, and must have his machine well in hand to avoid injuring the car ahead, so long as the man ahead is driving in accordance with his rights.

"If two automobiles are traveling in the same direction along a public highway and the driver of the rear car wants to pass, he must not only sound his horn, but before attempting to pass, he must be reasonably assured that the driver ahead knew he was behind, had heard the request and accorded the right of way, before the driver of the car ahead can be charged with negligence in failing to give the right of way by reason of an usual use of the roadway.

"Where two automobiles were traveling in the same direction along a public highway, and the rear car attempted to pass the first one just as it was turning to the left out of the highway, and was injured. the driver of the front car was not guilty of negligence in turning to the left without signaling if he did not know of the approach of the rear car."

In the case at bar. the question arises as to whether or not the defendant Butts knew of the approach of the rear car before he commenced turning his car to the left to cross to the opposite side of the highway to go on an intersecting road. and, if he did possess such knowledge before making such turn, it was a question of fact for the jury to determine whether he was proceeding with that care and caution. having due regard to the rights and safety of others on the public highway, as the ordinary person would exercise under like or similar circumstances.

It was also a question of fact for the jury to determine whether or not the defendant Butts was guilty of negligence in bringing

his car to a complete stop across the center of the highway, or beyond the center of the highway, if he had been informed of the approach of the car in the rear. Both drivers had the right to the use of the highway, but it was the duty of each to avoid the accident in question.

Chapter 16, S. L. 1923, requires that motor vehicles operating on the public highway should be driven in a careful and prudent manner, having due regard for the traffic and use of the highway and for the safety of pedestrians and of property and the operators of other vehicles.

The majority opinion reverses this case and directs judgment for the defendant. The rules of the road, Rule 4 (section 10164, C. O. S. 1921), as amended by Session Laws of 1927, c. 76, provide that "all vehicles turning to the left into another road shall pass around the center of the intersecting road before turning." It was not necessary to plead the statute. The evidence is not clear as to whether or not the defendants' car passed beyond the center of the intersecting road before turning, nor was there any instruction requested or given on this question. The plaintiff had the right to have this provision of the law complied with. The opinion considers surmises, speculation, and conjectures. This court has often announced the rule that, when a cause is submitted to the jury upon the issues joined, with instructions fairly stating the applicable law, this court will not review the evidence for the purpose of determining the weight thereof and substitute its judgment for the judgment rendered on the verdict, if there is any competent evidence reasonably tending to sustain the verdict, though the evidence be conflicting. In my opinion the court is substituting its judgment as to the facts in this case for that of the jury, the triers of the facts. The issues were fairly presented under applicable instructions with the exception as to the law covering the rules of the road, supra, concerning which neither side raised any question as to the instructions which failed to include this duty which the defendants owed to the plaintiff. In my opinion there was sufficient evidence of primary negligence for the determination of the jury.

Even under the reasoning adduced in the majority opinion, the cause should not be reversed with directions to enter judgment for defendants, but the same should have been reversed with directions for a new trial to enable the parties to more fully submit evidence on the question of whether or not the defendants breached the rule of the road (section 10164, C. O. S. 1921, supra, as amended) in turning to the left into another road. It is my opinion that the judgment of the trial court should have been sustained.

For these reasons, I dissent.