249 F.2d 54
 Olin R. STONE, Aldo Stone, Vera C. Smith, Francis A. Miller,
and the Wood Oil Company, a corporation, Appellants,
v.
Danube McFARLIN, Mamie Sue McFarlin, Dave Morgan, Dave
Morgan, doing business as Dave Morgan Oil Company, R. L.
Tayloe, Rosalind No Ear, and The Bureau of Indian Affairs of
the Department of Interior of the United States of America, Appellees.
 No. 5591.
 United States Court of Appeals Tenth Circuit.
 Oct. 21, 1957, Rehearing Denied Nov. 29, 1957.
 
 Neal E. McNeill, Jr. and Neal E. McNeill, Tulsa, Okl., for appellants.
 Robert S. Griswold, Jr., Atty., Dept. of Justice, Washington, D.C. (Perry W. Morton, Asst. Atty. Gen., Paul W. Cress and Leonard L. Ralston, U.S. Attys., Oklahoma City, Okl., and Roger P. Marquis, Atty., Dept. of Justice, Washington, D.C., on the brief), for United States, appellee.
 W. D. Greenshields, Ponca City, Okl. (Chester L. Armstrong, Jr., Ponca City, Okl., Wm. W. Rodgers, John H. Gurley, Blackwell, Okl., and Lynn Adams, Oklahoma City, Okl., on the brief), for appellees.
 Before BRATTON, Chief Judge, and HUXMAN and BREITENSTEIN, Circuit judges.
 HUXMAN, Circuit Judge.
 
 
 1
 This was an action by the appellees against appellants to quiet their title to a tract of land in Kay County, Oklahoma. The specific land in controversy is a tract which plaintiffs claim has become a part of Lot 9 owned by them by accretion. Danube McFarlin and Mamie Sue McFarlin alleged ownership of the fee title, other than a one-half interest in the mineral rights which it was asserted vested in Rosalind No Ear, a restricted Indian, for a period of fifteen years. The Government intervened in order to protect the restricted Indian's interest. It is alleged the defendants, R. L. Tayloe and Dave Morgan, doing business as Dave Morgan Oil Company, owned an oil and gas leasehold interest on Lot 9. The complaint alleged that the remaining defendants assert adverse title and interest in and to Lot 7, all of which claims are unfounded.[1]
 
 
 2
 The litigation arose out of these facts: By Patent dated October 12, 1895, the United States conveyed to Grover Story Teller, a restricted Indian, Lot 7 of Section 30 in the Southeast Fourth of the Northeast Fourth and Lot 3 of Section 29, Township 5 North, Range 1 East of the Indian Meridian, in Oklahoma territory; by like Patent dated March 19, 1906, the Government conveyed to Rosalind No Ear Lots 6, 9 and 10 in Section 30, Township 5 North, Range 1 East of the Indian Meridian. Only Lots 7 and 9 are involved in this litigation and the remaining real estate may be disregarded. The Court found, and its finding is not disputed, that according to the Government survey of September 16, 1872, Lot 9 was shown to be in the South Half of the Northeast Quarter of Section 30, and was bounded on the south and east side by the Salt Fork Branch of the Arkansas River; that Lot 7 was shown to be in the East Half of the Northeast Quarter of Section 30 and was bounded on the north by the same stream. The Court further found that the Salt Fork Branch of the Arkansas River was a non-navigable stream. It is without dispute that at all times from the date of that survey and continuing to the date of this suit both lots continued to remain riparian in that they are bounded, the one on the south and the other on the north by the Salt Fork Branch of the Arkansas River. The Court found that the outward surge of the river at all times was to the south and in an easterly direction; that this has caused a gradual imperceptible and continuous wearing and washing away of the sands and soil, resulting in an extension of the river bed to the south and east; that at the same time by gradual alluvion and reliction soil has been accumulated to the north bank of the stream and that this process was so gradual that it was impossible to judge what was added at any moment of time; that by the foregoing described process of nature the course of the stream at the time of trial was far removed to the south and east from its position in 1872 to where Lot 9 has been extended to include a substantial portion of Lot 7. In Finding No. 18 the Court found the amount of this accretion. It is this added land from Lot 7 to Lot 9 which is in issue in this case. The Court quieted the title and interest of the plaintiffs and of R. L. Tayloe and Dave Morgan, doing business as Dave Morgan Oil Company, and of Rosalind No Ear, to this tract as constituting a part of Tract 9 by accretion.
 
 
 3
 We think the Court's finding that the addition of land to Lot 9, from the gradual movement of the river to the south and east, resulted from accretion is well supported by the record. In fact, throughout most of the trial, appellants conceded this. At the beginning of the trial in a colloquy between Court and Counsel, the Court asked appellants' Counsel, 'Now, I understood, Judge, that it was accretion?', to which Counsel replied, 'We will agree that it was accretion, but we have plead in there the question of what caused it.' And again by the Court '* * * I thought you had admitted there was accretion. I am sure you did at the time.', to which Counsel replied, 'I admit that it is accretion. But * * *' Counsel then advanced his reason why appellants were not entitled to prevail, conceding that the land in question was accreted land. The decision will, therefore, be predicated upon the finding that the land in controversy was accreted to Lot 9.
 
 
 4
 Oklahoma adheres to common law that accretions become the property of the owner of the adjoining land.[2] Appellants, while conceding this, contend that the general law of accretion does not apply to the facts of this case. It is their contention that the Patent of October 12, 1895, conveyed to Grover Story Teller a definite tract of land and fixed the north boundary of Lot 7 at the center of the Salt Fork Branch of the Arkansas River, as established by the survey of 1872, and that this boundary remained unaffected by the subsequent changes in the river. Error is predicated on the Court's refusal to so hold.
 
 
 5
 Appellants rely on a line of cases in which Oklahoma has held that where riparian land because of inroads of a river is lost by erosion or submersion, but through subsequent changes of the river the water disappears and the land reappears and the boundaries are susceptible of being definitely identified, title to the restored land is vested in the owner of the fee at the time the erosion or submersion occurred.[3] In the Hunzicker case, plaintiff owned a platted lot, the boundaries of which were fixed and established by a survey and made a matter of record. Plaintiff's property did not reach to the river and there was an intervening tract separately owned. By erosion, the river cut away this tract so that plaintiff's lot became riparian. When the river thereafter receded, reestablishing this independently owned tract, plaintiff's claim of ownership thereof by accretion was rejected because the Court held that plaintiff's boundary line was a fixed and established line which could at all times be established by mere measurement. The Court held that under these facts it would not apply the general law of accretion. The Court was careful, however, to point out that its decision was limited to the facts of that case. Thus the Court said, 'Without holding that, in all cases where land has been carried away or submerged by the action of the water in a lake or river and afterwards restored by the action of such water, such land belongs to the original owner thereof, we can see no reason, in justice or equity, why the land involved in this case, after it has been restored by the river, should be given to respondent merely because the river had at some time touched her land.'
 
 
 6
 But here we have no definitely fixed or established lines which can be ascertained at all times. Had the Patent conveyed Lot 7 to the center of the stream, as established by the survey of 1872, we would have a fixed line which might bring the case within the Hunzicker decision. There would still, however, remain the question whether it would be required that the river recede and that the land in dispute reappear on the same side of the stream with the remainder of Lot 7.
 
 
 7
 Neither do the cases of United States v. Elliott, 10 Cir., 131 F.2d 720; United States v. Champlin Refining Company, 10 Cir., 156 F.2d 769; and Choctaw and Chickasaw Nations v. Seay, 10 Cir., 235 F.2d 30, by our Court support appellants' position. None of them involved accreted land. They all involved the ownership of the bed of non-navigable rivers and the question in each was whether the grantor intended to reserve from the deed of conveyance of land bordering on such stream his admitted ownership of the land in the bed of the river.
 
 
 8
 Appellants make the contention that the judgment of the Court is in conflict with Section 1, Title 75 O.S.1951. The argument is somewhat difficult of comprehension. Appellants contend that Section 1, Title 75, modifies or abridges Section 335. As far as we can glean, Title 75 O.S.1951 dealt with the codification of the laws of Oklahoma. The portion of Section 1, Title 75, which it is claimed modifies the law of accretion reads as follows: '* * * provided that section 6639 of the Revised Laws, being a provision defining the rights of the owners of land abutting upon navigable waters, shall not be adopted or become a part of said revised laws under the provisions of this act; * * *' Appellants' contention seems never to have been considered by the Oklahoma Courts. It is sufficient, in our view, to say that whatever its meaning may be, it applies by its express terminology only to navigable water and, therefore, can have no application to riparian rights on non-navigable streams.
 
 
 9
 In the late case of State ex rel. Com'rs of Land Office v. Warden, 200 Okl. 613, 198 P.2d 402, 406, the Oklahoma Court reaffirms its adherence to the general law of accretion. It said: 'It is an established rule that where a non-navigable stream is made the boundary it is the center of the stream that constitutes the boundary and that apart from changes due to avulsion the boundary continues therein and shifts with the current thereof.' It is our conclusion from a consideration of the Oklahoma cases that, aside from factual situations similar to those set out in the Hunzicker case, Oklahoma adheres to the general law of accretion as evidenced by 60 O.S.C. 335, set out in footnote 2.
 
 
 10
 Appellants' contention that the application of the Oklahoma law of accretion constitutes a violation of the Fifth Amendment is not well taken. The facts in the cases cited to support this contention distinguish them from the facts in this case. Because of the nature of the grants in this case, the grantees took to the center of the stream and it remained their boundary at all times. When the center of the stream shifted, the boundary to their tracts shifted with it.
 
 
 11
 We think the Court correctly concluded that 60 O.S.A. 335, the Oklahoma law of accretion, controlled the disposition of this case, and its judgment is, therefore, affirmed.
 
 
 
 [1]
 This allegation standing alone is somewhat confusing. Plaintiffs do not deny defendant's title to what remains of Lot 7 but deny their ownership of that part of Lot 7 which they assert has become a part of Lot 9 by accretion
 
 
 [2]
 60 O.S.A. 335. 'Where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank. R.L.1910, 6750.'
 
 
 [3]
 Hunzicker v. Kleeden, 161 Okl. 102, 17 P.2d 384, 385; Mapes v. Neustadt, 197 Okl. 585, 173 P.2d 442