**Verner V. PARKER, Plaintiff,**

v.

**The UNITED STATES of America, acting By and Through the DEPARTMENT OF the INTERIOR BUREAU OF LAND MANAGEMENT, Oklahoma, Defendant.**

**No. CIV–75–0789.**

United States District Court, W. D. Oklahoma.

March 31, 1977.

M. Cecil Klem of Klem & Klem, Shattuck, Okl., for plaintiff.

John E. Green, Acting U. S. Atty., Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

RALPH C. THOMPSON, District Judge.

This action was tried to the Court without a jury on January 31, 1977, plaintiff appearing by his counsel, M. Cecil Klem of Klem & Klem, Shattuck, Oklahoma, and defendant appearing by its counsel, John E. Green, First Assistant United States Attor-

ney for the Western District of Oklahoma. The parties submitted certain evidence and exhibits by stipulation and further presented evidence, testimony and argument, together with trial briefs and proposed findings of fact and conclusions of law. Having heard and considered all such evidence, the Court files this Memorandum Opinion which shall constitute its findings of fact and conclusions of law.

The Court has jurisdiction of the subject matter herein, being real estate situated in Ellis County, Oklahoma, within the territorial jurisdiction of this Court; of the parties hereto, by virtue of record title to said real estate being vested in the United States of America and of the cause of action, being one to quiet the title in and to said real estate in the plaintiff and against the United States of America, pursuant to the provisions of Title 28 U.S.C.A. § 2409a and Title 28 U.S.C.A. § 1346(f).

The parties have stipulated and agreed to the following facts:

1. That the defendant, the United States of America, insofar as the records of the County Clerk of Ellis County, Oklahoma, are concerned, is the record owner of the following described real estate, to-wit:

The Southeast Quarter of the Northwest Quarter (SE¼ NW¼) and Lots Two (2), Three (3) and Four (4), Section Twenty-six (26), Township Eighteen (18) North, Range Twenty-five (25) W. I. M., Ellis County, Oklahoma;

2. That said real estate was, at the time of the original government survey in 1873, riparian land and constituted the North bank of the South Canadian River;

3. That since said original survey in 1873, all of said real estate has become eroded away and submerged and a part of the river bed of the South Canadian River;

4. That the plaintiff, Verner V. Parker, is the owner of the following described real estate, to-wit:

The Northeast Quarter of the Northwest Quarter (NE¼ NW¼), and all of the Northeast Quarter (NE¼) of Section Twenty-six (26), Township Eighteen (18) North, Range Twenty-five (25) W. I. M., Ellis County, Oklahoma;

5. That he has been the record owner thereof for more than fifteen (15) years next preceding the filing of this action;

6. That a major portion of said real estate was also eroded away and became submerged and a part of the bed of the South Canadian River;

7. That the South Canadian River has migrated and eroded more than one-half (½) mile North of the original position as indicated in the 1873 survey;

8. That the South Canadian River has now receded or migrated Southward so that all of the above described real estate owned by the plaintiff is now re-emerged;

9. That portions of each of the above described real estate owned by the defendant have re-emerged, and that portions of each are still submerged and within the river bed of the South Canadian River;

10. That the South Canadian River is now and was at all times material hereto a non-navigable river.

Additional lengthy stipulated facts relating to prior, inconclusive administrative considerations of these questions are omitted from this opinion as not controlling and not relevant.

*Plaintiff's Contentions*

Plaintiff contends that the erosion and submersion of all of the government land and the major portion of his land was indeterminable as to time and occurred slowly and imperceptibly by migration of the South Canadian River in a northerly direction; that all such land was still completely submerged and a part of the river bed as late as 1968 according to aerial photographs in evidence; that because of the erosion and submergence of the government's land, plaintiff's land became riparian; that upon the eroding away and submergence of the government's land, the defendant lost title thereto and plaintiff, upon his land becoming riparian, acquired title to the center of the stream upon the recession of the waters, reliction and re-emergence of

the lands here involved, and that title to both plaintiff's original lands and the government lands thereby became vested in plaintiff, together with all oil, gas and other minerals in, on or under said land, according to the doctrine of accretion.

### Defendant's Contentions

The government disputes plaintiff's contentions, except as to Lot 3, for reasons hereinafter discussed, and the government further contends that plaintiff is barred by the statute of limitations, Title 28 U.S.C.A. § 2409a, subparagraph (f).

### Findings of Fact and Conclusions of Law

The Court finds that all facts and matters stipulated by the parties are established as facts herein. In addition, the Court finds that the evidence establishes that the South Canadian River, which, according to the survey of 1873, once formed the south boundary of the government land in question, gradually and imperceptibly migrated northward submerging all of the government land and most of the plaintiff's land, such action being the result of accretion and not avulsion. The aerial photograph of these lands taken in 1937 (defendant's exhibit 1), with its overlay, clearly depicts the degree of erosion and submergence existing at that time. Subsequent thereto, and again gradually and imperceptibly through the years, the river narrowed its meander line and migrated back toward the south and by reliction or re-emergence, evident in 1968 (see aerial photo of 1968, defendant's exhibit 12), all of plaintiff's land and portions of government lands have re-emerged, each lot or other portion of which will be separately identified and discussed hereafter. Plaintiff contends that by reason of the foregoing, his lands became riparian to the river, so that he now owns both his lands and government lands through accretion to the center line of the river.

■ *As to Lot 1*: It is unclear whether plaintiff claims title to Lot 1 of government lands. However, Lot 1 was not at any time pertinent hereto contiguous to or riparian with any portion of the plaintiff's land and was, in fact, contiguous to the Southeast Quarter of the Northwest Quarter (SE¼ NW¼) and the Northwest Quarter of the Northwest Quarter (NW¼ NW¼) of Section 26. The Southeast Quarter of the Northwest Quarter (SE¼ NW¼) is government land and plaintiff claims no title to the Northwest Quarter of the Northwest Quarter (NW¼ NW¼) of Section 26. Thus Lot 1 is not contiguous to any land of the plaintiff or is otherwise in any location making possible plaintiff's acquisition by accretion.

*As to the Southeast Quarter of the Northwest Quarter (SE¼ NW¼) and Lot 2*: By the 1873 survey, Lot 2 is shown to be riparian on the north to the Southeast Quarter of the Northwest Quarter (SE¼ NW¼) of Section 26, which is and was government land. By 1973, the river's northward migration placed it entirely within the government's Southeast Quarter of the Northwest Quarter (SE¼ NW¼) so that only government lands were riparian to the river on either bank, according to the 1873 survey and aerial photographs of 1973 and 1976 (defendant's exhibits 6, 10A and 10B). While all of Lot 2 and the Southeast Quarter of the Northwest Quarter (SE¼ NW¼) were completely submerged at one time, through reliction and re-emergence, the same have re-appeared. During, and because of, the submergence of this government land, plaintiff's land in the Northeast Quarter of the Northwest Quarter (NE¼ NW¼) and the Northeast Quarter (NE¼) of Section 26 became riparian land. Thus, plaintiff urges that upon reliction and re-emergence of the government's land title thereto vested in plaintiff to the center-line of the river as it runs through the Southeast Quarter of the Northwest Quarter (SE ¼ NW¼), and Lot 2, by accretion.

■ Oklahoma follows the general common law of accretion. 60 O.S.1971

§ 335;[1] *Stone v. McFarlin,* 249 F.2d 54 (10th Cir. 1957) cert. denied, 355 U.S. 955, 78 S.Ct. 540, 2 L.Ed.2d 531 (1958). However an exception to the general rule has also been recognized by the Oklahoma Supreme Court in *Hunzicker v. Kleeden,* 161 Okl. 102, 17 P.2d 384 (1932), to the effect that where the land of A is riparian property, and is gradually washed away by the stream, so that B's land becomes riparian property, and that thereafter the stream recedes, B acquires only that portion of land which he had prior to said erosion by the stream, and A acquires such property as he had prior to the same being eroded away by the stream. This exception applies only to the extent that the boundaries are capable of ascertainment. Plaintiff here contends that by submergence and erosion, the boundary lines between his lands and government lands were obliterated and lost and upon restoration by accretion or reliction there is no way of identifying the original estate and therefore it is deemed to have been entirely destroyed and lost. If such were the facts here, the general rule of accretion would apply and plaintiff would acquire title as against the government to the middle of the stream. However, here government lands are identified by long-established section lines and lots, just as the property in *Hunzicker,* supra, was capable of being ascertained in accordance with surveys of the lots there involved. There, as here, the exact amount of land belonging to the government could be determined and located. Thus the rule in *Hunzicker,* supra, applies here. Plaintiff is entitled to acquire only that portion of land which he had prior to the erosion and submergence and the government acquires only such property as it had prior to the erosion and submergence. In *Hunzicker,* supra, the Court saw no reason, in justice or equity, why the land involved, after it had been restored by the river, should be given to plaintiff merely because the river had at one time touched his land. The Court fur-

ther concluded that after his land had been fully restored to him, he had all that he was entitled to or in good conscience could demand. The same rationale applies here. See also *Mapes v. Neustadt,* 197 Okl. 585, 173 P.2d 442 (1946); *Stone v. McFarlin,* supra· *Choctaw-Chickasaw Nations v. Herron,* 130 F.Supp. 720 (D.C.1955), aff'd 228 F.2d 830 (10th Cir. 1956).

■ *As to Lot 3* : The 1873 survey establishes that this lot was then riparian to the north bank of the river, but by 1973, the migration of the river northward resulted in plaintiff's land (NE¼ of Section 26) becoming riparian to the river in Lot 3. Accordingly, by accretion, plaintiff has acquired title to that portion of Lot 3 lying north of the center line of the river therein. 60 O.S.1971, § 355, supra, *Stone v. McFarlin,* supra. Further, while the land in Lot 3 has at one time been leased for oil and gas production by the government, no production has ever occurred, nor other action accomplished which has effectively severed the minerals from the land. Accordingly, in acquiring by accretion the portion of the surface of Lot 3 herein described, the Court concludes and holds that plaintiff has also acquired title to all the oil, gas and other minerals in, on or under the portion so acquired.

■ *As to Lot 4* : The 1873 survey established that this lot was riparian and contiguous to plaintiff's Northeast Quarter (NE¼) of Section 26, being situated between plaintiff's said property and the north bank of the Canadian River. As in the case of the Southeast Quarter of the Northwest Quarter (SE¼ NW¼) and Lot 2, hereinabove discussed, Lot 4 and plaintiff's lands contiguous to the north became submerged and upon reliction and re-emergence fast lands of Lot 4 re-appeared and again lie between the north bank of the river and plaintiff's lands in the Northeast Quarter (NE¼) of Section 26. Although at

1. 60 O.S.1971 § 335.
    Where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank.

one time, through submergence and erosion, plaintiff's Northeast Quarter (NE¼) became riparian, the controlling fact is that thereafter the lands were restored by the action of reliction and re-emergence, with boundaries capable of ascertainment in accordance with government section lines and lot boundaries. Thus the rule in *Hunzicker* applies and having so re-emerged with boundaries capable of ascertainment, such property belongs to the government as its original owner.

 *As to defendant's claim that plaintiff is barred by the statute of limitations*: The evidence established that there was no sign of the re-emergence of the lands herein sufficient that plaintiff knew or should have known of the claim of the United States therein prior to 1968. Title 28 U.S.C. § 2409a(f) requires that any civil action thereunder shall be barred unless it is commenced within twelve years of the date upon which it accrued, and that such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States. This action was commenced on September 15, 1975, and was thus commenced within the period of limitations.

### CONCLUSION

Accordingly, the Court finds and concludes that plaintiff is entitled to judgment quieting title in plaintiff to that portion of Lot 3 lying North of the centerline of the South Canadian River, Section 26, Township 18 North, Range 25 West of the Indian Meridian, Ellis County, Oklahoma, together with all oil, gas and other minerals, in, on or under said lands. All remaining claims of the plaintiff are denied and judgment thereon should be entered in favor of the defendant.