CHASE et al. v. CHEATHAM et al.

No. 30510. Sept. 21, 1943.

Rehearing Denied March 14, 1944.

146 P. 2d 585.

James M. Springer and Bill Berry, both of Stillwater, for plaintiffs in error.

Brown Moore and Guy Horton, both of Stillwater, for defendants in error.

RILEY, J. Birt Chase, joined by his wife, instituted this action October 31, 1939, to quiet title to lands in Payne county against Perry Cheatham and his wife, W. A. Knipe, E. R. Hert, and Paul L. Myrick. Thomas N. Berry and Thomas E. Berry, plaintiffs in error, claim under the Chase title. E. R. Hert and Paul L. Myrick claim under the title of Knipe.

The Chase land is described as lots 3 to 6, inclusive, of section 7, and lot 5 of section 8, township 17 north, range 3 E. I. M. According to the original survey in 1871-72, this land extended to the main channel of the Cimarron riv-er, which bounded it on the south. The Cheathams' land consisted of lots 7 to 10, inclusive, of section 7, which, as originally surveyed, was bounded on the north by the Cimarron river. Defendant Knipe owns in the township lot 6 of section 8, the west half of which was south and across the river from plaintiff Chase's lot 5.

Plaintiffs Chase base their claim on avulsion and seek to show that large quantities of their land, by violent force that was visible, was taken from the north bank by the river and deposited on the south side thereof, but that defendants claimed title to the middle of the stream, which constituted a cloud upon plaintiff's title sought by this action to be removed. Defendants Cheatham admitted change in the channel of the river, but relied upon the process and law of accretion. They also defended upon title by prescription under allegations of exclusive and adverse possession, for more than 15 years, of the land on the part of them and their predecessors in title. Defendant Knipe's answer was substantially the same.

Judgment went for the defendants under a finding that 37.27 acres of land had been added to the Knipe land, of which 35.35 acres came by both accretion and prescription, the balance being acquired by accretion only; that the additional Cheathams' land came by both accretion and prescription and title was quieted in the Cheathams and Knipe, subject to mineral rights acquired by Hert and Myrick from the latter.

Plaintiffs Chase, joined by defendants Berry, have perfected this appeal, and contend principally that the judgment is contrary to the weight of the evidence.

The evidence of plaintiffs shows that the soil on the north bank of the river

was of a sandy lime underlaid with quicksand, and that particularly in the years 1926 and 1927, on the occasion of floods, the current of the river along the north bank washed away the soil, and when the waters had receded this land was found to be deposited on the south bank in large quantities along lots 5 and 6 and lot 5 of section 8, respectively. To the contrary, and for the defendants, some of the witnesses testified that the change in the course of the stream and in the deposits of earth was slow, gradual, and imperceptible. The total time in which the larger change occurred extended over a period of years. The change of the channel of the river at the east end of plaintiff's land was something over ¼ mile.

The facts in the case at bar are somewhat akin to the situation presented by Willett v. Miller et al., 176 Okla. 278, 55 P. 2d 90, with the exception that the change in the course of the river here involved is considerably less. Therein the trial court was affirmed under the view that the land deposits were by avulsion. Despite the fact that the same river is involved, there are substantial differences in the cases presented. In the case at bar we are afforded the testimony and evidence of the county engineer of Payne county, wherein by exhibit it is shown that from the time of the original survey in 1871-72 to the year 1940, over a period of 69 years, while the recession of the river had been 1,470 feet, or a little more than ¼ mile, a gradual but persistent northward movement of the river, to the extent of 160 feet, and a consequent shifting of the south bank, is established with reference to a survey in the year 1925. The gain to the Cheatham land during these years amounted to 4.20 acres, and the addition to the Knipe land up until 1925 was 35.35 acres, and since that time, to the extent of 1.92 acres. From this evidence it appears that Cheathams lost 16.86 acres and gained 21.6 acres, and that at the point of the largest movement of the river the change averaged 21 feet per year; and upon the Knipe land, where the gain was greatest, the average in gain

of land was slightly in excess of 2 acres per year. Thus, the average movement of the river northward was about 10 feet per year.

While the average movement is not decisive of the issue presented, it would seem to be the burden of plaintiffs to show by preponderance of the evidence that the changes made in deposits of land were violent and subject to being perceived while they were going on. Goins et al. v. Merryman, infra.

As heretofore stated, there was conflict upon this point with the advantage to the trial court of being in a position to adjudge the candor and attitude of the witnesses. Amongst other things, the witness Knipe testified that a creek flowing into his and Cheathams' land from the southwest spread out over the flat, back upstream and deposited sediment, to the extent that it practically covered the fence posts, thus accounting for the deposits of land other than either by avulsion or accretion from plaintiffs' land. The witness was corroborated by many who were disinterested. The trial court made findings that large deposits of land came from the source of "Dug-Out Creek," claimed by the defendants as accretion. From a review of this record we cannot say that such findings are against the clear weight of the evidence.

Many of the witnesses who testified on behalf of plaintiffs upon cross-examination modified their statements so as to govern the matters about which they had given evidence from their experiences and knowledge gained from what occurred at a place a mile and a quarter away and involved in the Willett Case, supra, wherein the river had changed its course around a bend. In State of Oklahoma v. State of Texas, 260 U. S. 606, 43 S. Ct. 221, 67 L. Ed. 428, it was held:

"The doctrine that a river continues to be a boundary, notwithstanding erosion and accretion, applies * * * notwithstanding that during periods of high water the changes in the banks are rapid and material."

State v. Huffman et al., 318 Mo. 991, 2 S. W. 2d 582; Bouvier v. Stricklett, 40 Neb. 792, 59 N. W. 550.

In Goins et al. v. Merryman et al., 183 Okla. 155, 80 P. 2d 268, this court affirmed the decision based upon findings of accreted land where during a long period of time (30 years) flood stages appeared in the river and the north bank of it gave way and the river changed its course in that direction, and at the same time land of approximately the same quantity was deposited on the other bank, the width of the river remaining the same.

From a review of the evidence and in consideration of the authorities cited, without regard to the issue of title by prescription gained from adverse possession, we are of the opinion that the decision of the trial court is not against the clear weight of the evidence.

Judgment affirmed.

GIBSON, V.C.J., and BAYLESS, WELCH, HURST, and DAVISON, JJ., concur. CORN, C.J., dissents. OSBORN and ARNOLD, JJ., absent.