Everett NOLTE, P. D. Erwin and Zoe Rea Erwin, Plaintiffs in Error,

v.

Otho Paul STURGEON, Alwilda Sturgeon, Irvin Bollenbach, Eloise M. Bollenbach, Ewald Kramer, Alma Kramer, H. D. Groenewold, Venice Groenewold and W. C. Wehrenberg, Defendants in Error.

No. 39730.

Supreme Court of Oklahoma.

Oct. 9, 1962.

Rehearing Denied Dec. 11, 1962.

P. D. Erwin, Chandler, for plaintiffs in error and pro se.

Shutler, Shutler & Baker, Kingfisher, for defendants in error.

HALLEY, Justice.

This quiet title suit was brought to establish the boundary lines of certain property located on either side of the Cimarron River (hereafter called river or stream)

in Section 18, T. 18 N., R. 8 W., Kingfisher County, Oklahoma. We reproduce as Figure 1, a portion of exhibit of defendants in error:

FIGURE 1

69

PLAT OF SURVEY
GOVERNMENT LOTS 3 AND 4, SECTION 18, TOWNSHIP 18 NORTH, RANGE 8 WEST

The trial court by its judgment found that the north line of Lots 3 and 4 and the south line of Lot 2 was and is the center or medial line between the right and left meander lines of the river which flows generally eastward in this area, the right bank being on the south and the left bank being on the north. The original United States government survey of the lots in 1872 and 1873 did not fix the center line

between the meander lines, but it did establish the meander lines. The parties in their briefs indicate that the medial line between the meander lines was the boundary at the time of the survey; and therefore, by implication, such was the boundary at the time these lots were patented in 1898 since no change of boundaries was alleged or attempted to be proven between 1873 and 1898.

Plaintiffs in error, Everett Nolte, P. D. Erwin and Zoe Rea Erwin, own certain undivided interests in the oil, gas and mineral rights in Lot 2. Defendant in error Kramer owns the surface and mineral interest in Lot 3. Defendant in error Groenewold owns the surface and mineral interest in Lot 4. Plaintiffs in error claimed in the trial court that the boundary of Lot 2 has changed or shifted by accretion to the south and that the center of the stream of water, as so changed, remains the boundary line between Lot 2 on the north and Lots 3 and 4 on the south. The defendants in error claimed that the changes in the stream took place suddenly and perceptibly and that such change by avulsion works no change of ownership or boundary. The trial court entered its judgment in accordance with the theory advanced by the defendants in error. Plaintiffs in error filed a motion for new trial and appeal from the order overruling it. Although other parties and other tracts were involved in the trial court action, the parties and lands designated above are the only ones involved in this appeal. All discussions in this opinion of the river and its banks will be limited to it as it affects Lots 2, 3 and 4.

The contentions of plaintiffs in error on this appeal are set forth in separate specifications, the first of which is that the judgment of the trial court in fixing the boundary line as it existed at the time of the U. S. Government survey was clearly against the weight of the evidence. In this regard they say that the defendants in error had the burden of proving avulsion under the authority of Chase v. Cheatham, 194 Okl. 1, 146 P.2d 585. In that case we said that the burden was on the party claiming avulsion to show by a preponderance of the evidence that the changes made in deposits of land were violent and subject to being perceived while they were going on.

■ In the instant case, defendants in error presented two witnesses who testified that the cut bank or low bank (the bank within which the stream runs except in times of flood) on the south side of the river consisted of sandy textured soil underlaid with quicksand and that, in case of freshets or floods, the quicksand would be under cut and the soil or bank on the south side would cave into the river in chunks. Both of these witnesses together with another one that testified for defendants in error testified that when the river returned to its normal flow after such freshet or flood the width of the stream was approximately as before the freshet or flood and that quantities of soil or sand particles were deposited and built up on the north side of the stream. All of these witnesses agreed that the particles of land washed away from the south side of the stream went on downstream from the properties involved here and that the deposits formed on the north side of the stream were made up of particles carried by the river from points upstream. These witnesses discussed floods in 1916, 1921, 1927, 1941, 1957, 1958 and 1960. None of these witnesses testified that changes occurred in the location of the river or stream of water at any time other than at such flood periods.

Such testimony as that outlined above shows that defendants in error sustained the burden of showing that changes in the stream or river were sudden or violent and subject to being perceived at the time they were taking place.

Witnesses for plaintiffs in error testified to changes in location of the stream which occurred over the years and that for the most part the change had progressed to the south although the stream had switched to the north as well as the south at various times. Each of the witnesses for plaintiffs

in error also stated that they had seen the changes in the banks of the stream at the time such changes were taking place.

■ Plaintiffs in error lay claim to that land which has formed on the north side of the stream as a result of the changes related above. Accretions are defined in 60 O.S.1961 § 335:

"Where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank. R.L. 1910, § 6750."

The test for determining whether changes are accretion or avulsion is stated in the second paragraph of the syllabus of Goins v. Merryman, 183 Okl. 155, 80 P.2d 268:

"In determining if a change in the course of a river is by accretion or avulsion, the test is not whether the witnesses may see, from time to time that progress has been made, but whether they could perceive the change while it was going on."

The Goins case, supra, was a law action wherein we stated that the judgment finding accretion would not be reversed if there was any competent evidence reasonably tending to support it. We then said:

"* * * The evidence on the whole shows that during the 30 years within which the change took place the river would regularly rise, the land be flooded for a few days, during which time the north and east bank would cave away, and as the water subsided the course of the river would have moved slightly in that direction. Also by such process the evidence shows that land was deposited on the south and west sides of the river in approximately the same quantity so that the width of the river bed was substantially the same. We find no testimony to the effect that any person saw the banks cave away or per-

ceived the changing process while in progress. On the other hand, a great number of witnesses testified that the change in the course of the river was gradual. * * *"

As may be seen, the testimony in that case showed an *imperceptible* change. Such case together with other cases cited by plaintiffs in error to a like effect, especially State v. Warden, 200 Okl. 613, 198 P.2d 402, are not in point.

■ Plaintiffs in error emphasize the testimony of the various witnesses who state that the land particles which washed away from the south bank cannot be identified as the same land particles that were deposited on the north bank. They indicate that such identification is a requirement of proof before a finding of avulsion may be made. A similar argument was made and answered in Willett v. Miller, 176 Okl. 278, 55 P.2d 90:

"Cases are cited which seem to hold that before the doctrine of avulsion may be applied in a case where land of one riparian proprietor is, suddenly, by flood water, washed away, and at the same time and by the same means land is formed along the opposite bank and adjacent to the land of the riparian proprietor on that side of the stream, the owner of the land washed away must be able to follow and identify his soil as the identical soil washed away from his premises, and if he is not able so to do, he must lose. Such is not the true rule. The true rule is that if the change is so sudden that the owner of the land washed away is able to point out approximately as much land added to the opposite bank as he had washed away, the doctrine of avulsion applies, and there is no change in the boundary line. It remains as before, notwithstanding the change in the course of the stream, the center of which formed the boundary line.

"It is common knowledge, and common sense teaches, that in such cases

particles of soil, sand, gravel, etc., are not carried directly across the current of rapid streams and deposited upon the opposite bank, and for this reason no riparian proprietor could, after a freshet, say with certainty that he could identify the particular particles of soil, sand, and gravel deposited upon the opposite bank of the stream during the freshet as formerly forming a part of his land."

The recent case of Buchheit v. Glasco, Okl., 361 P.2d 838, was a case where a flood in 1904 caused land previously forming the west bank of the South Canadian river to become part of the river bed, but where no accompanying change was made in the east bank; thus, in effect, the river merely widened itself. Such a case is distinguishable from the instant case because of those facts, but the same rule of law as to avulsion was said to be applicable. We said there:

"The authorities appear to be in agreement on the proposition that the doctrine of avulsion is only applicable where the loss of land is sudden and perceptible. See Goins et al. v. Merryman et al., 183 Okl. 155, 80 P.2d 268; Chase et al. v. Cheatham et al., 194 Okl. 1, 146 P.2d 585; State ex rel. Comm'rs. of Land Office v. Warden et al., supra; City of St. Louis v. Rutz, 138 U.S. 226, 11 S.Ct. 337, 34 L.Ed. 941, and 56 Am.Jur. 'Waters', Sec. 476, p. 891."

■ Plaintiffs in error attempt to further distinguish the Buchheit case, supra, because the river in that case was changed by avulsion only once, whereas in this case there have been numerous floods and consequent perceptible changes over the years. Such a distinction may not be made. Each separate "sudden and perceptible" change or loss of land is avulsion. We also said in the Buchheit case, supra:

"In the first paragraph of the syllabus to Mapes et ux. v. Neustadt, supra, [197 Okl. 585, 173 P.2d 442], we said that

'Changes in riparian status by reason of avulsion does not work a change in boundaries.' See also Willett v. Miller et al., 176 Okl. 278, 55 P.2d 90. This appears to be a rule that is recognized and followed by practically all courts in this country. See 56 Am.Jur. 'Waters' Sec. 477, p. 892."

■ The evidence in the instant case supports the finding of the trial court that the changes in the river were by avulsion and not by accretion and therefore the judgment is not against the clear weight of the evidence.

Plaintiffs in error made a second specification of error that the claim of avulsion is barred by the provisions of 60 O.S.1961 § 336, which provides:

"If a river or stream carries away, by sudden violence, a considerable and distinguishable part of a bank, and bears it to the opposite bank, or to another part of the same bank, the owner of the part carried away may reclaim it within a year after the owner of the land to which it has been united takes possession thereof. R.L.1910, § 6751."

■ The provision of this statute has never been interpreted by this Court to be a one-year statute of limitation. In fact, we have stated that a party claiming disputed land, about which the doctrine of avulsion has been found to be applicable, must show that he has had actual exclusive and uninterrupted possession of the land for fifteen years, and that he went into possession and held possession under claim of title. Willett v. Miller, 176 Okl. 278, 55 P.2d 90. Plaintiffs in error in the instant case failed to make such a required showing and therefore the trial court was correct in ruling against them on their claim of alleged title by prescription. Porter v. Herron, Okl., 295 P.2d 772.

The third specification of error by plaintiffs in error is applicable only if their theory of accretion should be upheld. Since we have found that the trial court properly applied the doctrine of avulsion rather than

accretion, no purpose would be served in discussing the third specification.

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, DAVISON, IRWIN and BERRY, JJ., concur.

JACKSON, J., dissents.