ALLARD, Appellants, v. CURRAN et al, Respondents.

(168 N. W. 761).

(File No. 4324.   Opinion filed September 3, 1918.)

**Riparian Rights—Submerging Plaintiffs' Land and Section Line, Then Part of Defendants'—Recession of Submergence Restoring Plaintiffs', Part of Defendants', Land—Tax Title to Latter—Riparian Ownership, Whether Involved.**

Where plaintiffs' tract of land was bounded on the south by the Missouri River and north by defendants' quarter section, and the river cut away its bank along the south side and gradually eroded away the surface of said land until it became entirely submerged, such action continuing until portions of defendants' land was also washed away; and thereafter the river receded, and, by a gradual deposit of silt and alluvium, restoring all the washed-away portion of defendants' land and also that of plaintiffs, held, in a suit to quiet title to a part of that portion of what had been plaintiffs' land which had been restored and to which plaintiff held tax title, under an assessment made subsequently to the restoring of the land, defendants contending that such title is void for the reason that there was no such land as described in the tax deeds in existence at the time of assessment, held, that such contention is erroneous; the rule, held by some courts, where by such submergence the boundry line between the riparian estate and adjacent estate is obliterated and lost, not being applicable, since, the boundary line in the instant case being a government section line, it can be re-established without difficulty; that the land involved, after it had been restored by the river, did not belong to defendants merely because the river had at some previous time touched their land in the eroding process; that defendants' land never by reason of the washing away of plaintiffs' land became riparian to the river; and that when restored it belonged to plaintiffs, the original owners thereof; since defendants, after their land had been restored, had all they were entitled to or in good conscience could demand; that after plaintiffs' land had been so restored, being capable of identification, it should be treated as though it had never been submerged; that the taxes on which plaintiffs' deeds are based were valid.

Appeal from Circuit Court, Union County. Hon. Joseph W. Jones, Judge.

Action by Dona Allard and Valeda Allard, against Mary Curran and others, to quiet title to realty. From a judgment for defendants, and from an order denying a new trial, plaintiffs appeal. Reversed, and remanded with directions.

*Gantt & Ellis,* for Appellants.

*Thomas McInerny,* for Respondents.

Appellants cited:

Sec. 288, Civ. Code; Bates vs. Illinois Cent. R. R. Co., (U. S.) 1 Black, 204, 28 Myers Federal Decisions, 707; Railroad Co. v. Schurmeir, (U. S.) 7 Wallace, 272, 28 Myer's Fed. Dec., 709; Maw v. Bruneau, (S. D.) 156 N. W., 792; Fowler v. Wood, 73 Kansas, 511, 85 Pac., 763, 6 L. R. A. (N. S.), 163; 13 L. R. A., 61, 687.

Respondent cited:

Cox v. Arnold, (Mo.) 31 S. W., 592; Naylor v. Cox, (Mo.) 21 S. W., 589, 592; Welles v. Bailey, 55 Conn., 292, 10 Atl., 565; New Orleans v. United States, 10 Pet., 662. Welles v. Bailey, 55 Conn., 566; 10 Atl., 565; Peuker v. Canter, (Kas.) 63 Pac., 617; Note 93 to page 352, Vol. 29 Cyc.

POLLEY, J. This action was brought to quiet title to a tract of land claimed by appellants and described as lots 5 and 7 in section 31, in a certain township in Union county. As originally surveyed, said tract of land was bounded on the south by the Missouri river and on the north by the southwest quarter of section 30, in the same township, and which belongs to respondent. During the ten-year period between 1878 and 1888, the river cut away its bank along the south side of lots 5 and 7, in section 31, and, by gradual and imperceptible degrees, eroded and washed away the surface of said land until it became entirely submerged by the river. Such action of the river continued until some portions of respondent's land were also washed away, though to what extent does not appear, nor is it material. Some time after 1888, the river commenced to recede from the land thus submerged and, by the gradual deposit of silt and alluvium, restored the land that had been washed away. Not only was the land in section 30 restored, but the river continued to recede until, by the year 1900, lots 5 and 7 in section 31 had also been fully restored. Appellants

now claim that, when said land was thus restored, they were and are the owners thereof and entitled to its possession. On the other hand, respondent claims that, when the river, by washing away appellant's land, had reached her land, her land then became riparian to the river, and that she became clothed with all the rights of riparian ownership; that, as a necessary result of such riparian ownership, she has a right to follow the river bank, as it recedes, as the boundary of her land; and that she is the owner of all the land that was created in front of her land as it existed at the time the river commenced to recede. · This contention necessarily includes the proposition that, when the river washed away the surface of appellant's land, the land itself was utterly destroyed, and that appellants had nothing left that could be the subject of ownership or that could be added to or restored when the river receded and replaced the portion of the land that had been carried away. It appears in the record that appellants are claiming under tax deeds based upon taxes levied upon said lots 5 and 7, subsequent to the restoration of the said land. Respondent claims that these deeds are void, for the reason that there was no such land as lots 5 and 7 in existence at the time said taxes were attempted to be levied.

That respondent's contention relative to her riparian rights is supported by some of the courts cannot be questioned. In Welles v. Bailey, 55 Conn. 292, 10 Atl. 565, 3 Am. St. Rep. 48, the rule applicable to such cases is stated as follows:

"If a particular tract was entirely cut off from a river by an intervening tract, and that intervening tract should be gradually washed away until the remoter tract was reached by the river, the latter tract would become riparian as much as if · it had been originally such. This follows necessarily from the ordinary application of the principle. All original lines submerged by the river have ceased to exist; the river is itself a natural boundary, and every changing condition of the river in relation to adjoining lands is treated as a natural relation, and is not affected in any manner by the relations of the river and the land at any former period. If, after washing away the intervening lot, it should encroach upon the remoter lot, and should begin to change its movement in the other direction, gradually restoring what it had taken from the remoter lot, and finally all that it had taken from the in-

tervening lot, the whole, by the law of accretion would belong to the remoter, but now proximate, lot. However having become riparian, it has all riparian rights. This general principle is recognized by all the text-writers and by numerous decisions of the English and American courts. The river boundary is treated in all cases as a natural boundary, and the rights of the parties as changing with the change of its bed."

In Peuker v. Canter, 62 Kan. 363, 63 Pac. 617, the Missouri river washed away all of the tract that was riparian to the river and for some distance into the remoter tract. The river then receded and, by accretion, restored all of both tracts precisely as was done in this case. The Supreme Court of Kansas followed the rule announced in Welles v. Bailey, supra, above quoted. This rule appears, as is indicated by some of the above quoted language, to have sprung from the fact that, when the riparian estate is destroyed and carried away, the boundary line between that and the adjacent estate is obliterated and lost, and that, in case of restoration by accretion or reliction, there is no way of identifying the original estate, and therefore it is deemed to have been entirely destroyed and lost. But no such reason exists in this case. The boundary line between the lands of appellant and respondent was a government section line, and of course can be re-established without difficulty. In the absence of the reason, there is no justification for the rule. Without holding that, in all cases where land has been carried away or submerged by the action of the water in a lake or river and afterward restored by the action of such water, such land belongs to the original owner thereof, we can see no reason, in justice or equity, why the land involved in this case, after it had been restored by the river, should be given to respondent merely because the river had at some time touched her land. After her land had been fully restored to her, she had all that she was entitled to or in good conscience could demand. What seems to us to be the rational rule applicable to the facts as they appear in this case is that announced in Association v. Shriver, 64 (N. J. L.) 550, 46 Atl. 690, 51 L. R. A. 425. This case is supported by a formidable array of authorities which are collected and reviewed in the opinion of the court and cited in the note appended thereto in 51 L. R. A. These cases fully sustain appellant's contention. We believe that, after appellant's land had been

restored by the action of the river, being capable of identification, it belonged to appellant and should be treated as though it had never been submerged.

[2] From this it follows that the taxes on which appellant's tax deeds are based were valid and, under the facts found by the trial court, judgment should have been in favor of appellants.

The judgment and order appealed from are reversed, and the cause is remanded to the trial court, with directions to enter a decree quieting title in the appellants to the disputed premises.