**HUNZICKER et al. v. KLEEDEN et al.**

No. 22040. Opinion Filed Nov. 15, 1932.

Rehearing Denied Dec. 27, 1932.

W. F. Collins, for plaintiff in error Don Leon Oil Company.

Moss & Powell, for intervener and plaintiff in error Frederick L. Hunzicker.

Ledbetter, Stuart, Bell & Ledbetter and W. R. Withington for defendants in error W. B. Armour, Jennie W. Armour, L. E. Pryer, R. T. Edwards, W. T. Salmon, W. A. Ledbetter, H. L. Stuart, R. R. Bell, E. P. Ledbetter, and W. R. Withington.

Everest, McKenzie, Halley & Gibbens, for defendant in error R. A. McArthur.

CULLISON, J. The Don Leon Oil Company, as plaintiff, instituted suit seeking an injunction against Kleenden and McArthur, defendants herein, enjoining said defendants from entering upon or using any of plaintiff's property for the drilling of an oil well.

Later, Frederick L. Hunzicker intervened in said cause and pleaded that he was the owner of certain lots covered by plaintiff's oil and gas lease, and also claimed a portion of the property upon which defendants were drilling an oil and gas well.

Defendants answered the plea of intervention and placed in issue the title in and to the property under controversy. Upon said issue the said cause was tried by the court without a jury and resulted in judgment favorable to defendants, from which judgment plaintiff and intervener appeal to this court, and will hereinafter be referred to as plaintiffs.

Plaintiffs' first contention is that the land between the end of plaintiffs' lots and the river bed, appearing as a street, but not officially so designated, was in reality a street, and since the same was not used as a street and there was no property beyond said tract and the river bed subject to ownership, that when said tract of land was not used as a street, the same became the property of the adjoining lot owners.

The contention of plaintiffs has been passed upon by this court in the case of Anderson-Prichard Oil Corporation v. Key Okla. Oil Co., 149 Okla. 262, 299 P. 850. Said case is decisive of the question here presented, and we need not further consider the matter herein.

Plaintiffs' second contention is that part of the land claimed by defendants was the property of the intervener herein, having become such when the north fork of the Canadian river cut into plaintiffs' land and made plaintiff a riparian owner.

This presents for our consideration the question of the rights of a riparian owner upon a stream. When the property in question was platted into towns lots, plaintiffs' property was a short distance from the river bank, and the property controlled by defendants was the property between plaintiffs' property and the river bed, and defendants contend their property was riparian property.

Under this state of facts, plaintiffs contend that, since the river by erosion cut away defendants' land and reached plaintiffs' land and thereafter cut away a portion of plaintiffs' land so that plaintiffs were the riparian owners, then plaintiffs acquired the riparian rights to the river bed as against defendants when the river receded.

Upon this proposition of law there is a sharp conflict of the authorities. The courts of Connecticut and Kansas hold to the view contended for by plaintiffs, but, on the other hand, a number of our courts have held the contrary view, which is that where the land of defendants is riparian property and is gradually washed away by the stream so that plaintiffs' land becomes riparian property, and thereafter the stream recedes, then plaintiffs acquire only that portion of land which they had prior to said erosion by the stream and defendants acquire such property as they had prior to the same being eroded away by said stream.

We believe that the latter view is the more equitable and better view, where the boundaries are capable of determination. In the case of Allard v. Curran (S. D.) 168 N. W. 761, the Dakota court, after outlining the authorities as outlined, supra, continued to discuss said matter as follows:

"This rule appears, as is indicated by some of the above-quoted language, to have sprung from the fact that, when the riparian estate is destroyed and carried away, the boundary line between that and the adjacent estate is obliterated and lost, and that, in case of restoration by accretion or reliction, there is no way of identifying the original estate, and therefore it is deemed to have been entirely destroyed and lost. But no such reason exists in this case. The boundary line between the lands of appellant and respondent was a government section line, and of course can be re-established without difficulty. In the absence of the reason, there is no justification for the rule. Without holding that, in all cases where land has been carried away or submerged by the action of the water in a lake or river and afterwards restored by the action of such water, such land belongs to the original owner thereof, we can see no reason, in justice

or equity, why the land involved in this case, after it has been restored by the river, should be given to respondent merely because the river had at some time touched her land. After her land had been fully restored to her, she had all that she was entitled to or in good conscience could demand. What seems to us to be the rational rule applicable to the facts as they appear in this case is that announced in Association v. Shriver, 64 N. J. Law, 550, 46 Atl. 690, 51 L. R. A. 425. This case is supported by a formidable array of authorities which are collected and reviewed in the opinion of the court and cited in the note appended thereto in 51 L. R. A. These cases fully sustain appellant's contention. We believe that, after appellant's land had been restored by the action of the river, being capable of identification, it belonged to appellant and should be treated as though it had never been submerged at all."

Also, in the case of Stockley v. Cissna, 119 Fed. 812, at page 831 of the opinion:

"As a consequence of the changed course of the river in 1876, these submerged Trigg lands have been restored, through accretion or some other process, and are now dry land. It cannot be pretended that, because the surface of these two bodies of Trigg land was washed off, Trigg lost his title to the land so submerged, beyond recovery. The law is otherwise. Land lost by erosion or submergence is regained to the original owner of the fee when by reliction or accretion the water disappears and the land emerges."

Also, in the case of Keel v. Sutton (Tenn.) 219 S. W. 351, at page 353:

"That the land in question because of the inroads of the river became untenantable, and they were consequently forced to abandon the same, did not have the effect of divesting title out of them. It is well settled that where land becomes submerged by reason of erosion, or from some other cause, title thereto is not lost, and when the same reappears, either by accretion or reliction. the original owner is entitled to take possession of and hold the property reclaimed. Angell, Tidewaters, 76, 77; Mulry v. Norton, 100 N. Y. 424, 3 N. E. 581, 53 Am. Rep. 206; City of St. Louis v. Rutz, 138 U. S. 226, 11 Sup. Ct. 337, 34 L. Ed. 941-950."

We also make the further observation that the north fork of the Canadian river is a nonnavigable stream at the place under consideration, while the cases for and against the rule stated above deal with navigable streams.

Under the law, the bed of a navigable stream belongs to the state. Vickery v. Yahola Sand & Gravel Co. (State ex rel. Com'rs of Land Office, intervener), 158 Okla. 20, 12 P. (2d) 881; but the bed of a nonnavigable stream belongs to the riparian owners, and each riparian owner has a property right in his half of the river bed, with which he may deal as he sees fit. It follows that where a nonnavigable stream, such as the north fork of the Canadian river, erodes away a portion of the land of defendants, defendants' title to said land continues to exist so long as any portion of that part of the land which was defendants' continues to exist as a part of the river bed, and, of course, under this theory, and under the theory of the cases cited above, when the river recedes and abandons the river bed, said land continues to be the property of the former owners.

In the case at bar, plaintiffs' land was certain definite lots, capable of being ascertained in accordance with the surveys of said lots. When the river receded, the exact amount of land belonging to plaintiffs could be determined and located, and such land as existed beyond the boundaries of plaintiffs' land was not plaintiffs' land by right of accretion, but continued to be the land of the original owners thereof.

The original owners of the river bed had a right to the river bed which had never been sold or conveyed away, and so long as they retained their right in and to said property, they were entitled to prevail as against plaintiffs' contention that the title in and to said property was vested in them. The judgment of the trial court is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.

Note.—See under (1) 27 R. C. L. 1371; R. C. L. Perm. Supp. p. 6069. (2) 4 R. C. L. 118, 119. (4) annotation in 51 L. R. A. 425; 8 A. L. R. 640; 41 A. L. R. 395; 1 R. C. L. 242.