MAPES et al. v. NEUSTADT.

No. 32197. Oct. 15, 1946.

*173 P. 2d 442.*

R. H. Morgan, of Watonga, for plaintiffs in error.

Falkenstine & Fisher, of Watonga, for defendant in error.

BAYLESS, J. H. D. Mapes and wife appeal from a judgment of the district court of Blaine county, tried without a jury, in favor of Walter N. Neustadt. Mapes, asserting title to certain described real estate, alleged they were the owners also of certain land extending to the south (not included in the specific description of the land) by reason of accretion, 60 O.S. 1941 § 335.

There is no substantial difference in the evidence of the contesting parties. Mapes' title to the 68 acres in the north half of the northeast quarter is based upon a patent from the federal government to the northeast quarter according to the government survey and plat. Neustadt's title to 110.5 acres in the southeast quarter (now claimed by Mapes) was based on a patent from the federal government described as lots 5 and 6. When the Mapes land was surveyed first it was nonriparian, and the river occupied parts of lots 3 and 4 (which were never patented to anyone) and its south bank was riparian to lots 5 and 6. By avulsion prior to the issuance of the patent to Mapes' land all of lots 3 and 4 north of the river were destroyed, and also parts of the north-

east quarter, so that it became in fact riparian to the river and occupied such status at the time it was patented. It was patented in 1917, and beginning in 1923 and continuing for many years there was movement by the river to the south that gradually restored lots 3 and 4, destroyed lots 5 and 6, and then restored them. It is Mapes' contention that their riparian line (the medial line of this nonnavigable stream) moved with the river, and the restoration of lots 3 and 4 (title to which is not involved here) and 5 and 6 accreted to the south riparian line as of the time of the patent, and by the law of accretion belongs to them.

The trial court found that Mapes' line as surveyed was nonriparian, and as the river now exists it is possible to identify the land of the contesting parties, and so being, the equities are with Neustadt and not the Mapes, and that each is the owner now of what was originally patented and no more.

Citing the statute supra, and the decisions of this court in Goins v. Merryman, 183 Okla. 155, 80 P. 2d 268, and Chase v. Cheatham, 194 Okla. 1, 146 P. 2d 585, Mapes contends that the trial court erred.

To the contrary, Neustadt cites Hunzicker v. Kleeden, 161 Okla. 102, 17 P. 2d 384, in support of the judgment in his favor.

There appear to be many factual differences between the Hunzicker Case, supra, and the Chase Case, supra, affecting the discussion of the rules involved that tend to explain the difference, if any, in the ultimate rule applied in each case. Perhaps the presence of the issue of prescription in the latter case suffices to destroy any analogy. However, as between the Hunzicker and Goins Cases, supra, it is difficult to point out factual differences that brought about the difference in the law applied, unless it was the assertion in the Hunzicker Case of equitable principles and the proof of restoration rendering identification possible; neither of which seems to have been mentioned in the Goins Case. It is significant that the Hunzicker Case was not mentioned in either of the other cases cited, supra. However, there is another factor shown in the evidence of this case that served to differentiate it from the cases relied on by Mapes, and this is avulsion. In all of the cases cited by either of the parties it appears that any movement of the streams in question was by slow and imperceptible degrees over a long period of time and clearly amounted to what was known at common law and is defined by our statute, supra, as accretion. By the common law any sudden change in the channel of a stream or movement of one mass of land from one shore to another, where it was identifiable, was avulsion and did not affect titles nor change boundaries, 67 C.J. 828 § 239, and the cases cited in the footnotes. Our statutory definition of avulsion is not as broad as the common law definition and is limited solely to the right to reclaim mass removals that can be identified subsequently, 60 O.S. 1941 § 336. We have no statute dealing with avulsion in the sense of a sudden change in the channel of a river such as occurred in this instance. Since the rule at common law and under our statute, where applicable, is that avulsion does not change the boundaries nor affect titles, the flood that occurred in 1914 whereby a part of the land now owned by Mapes was carried away suddenly by a change in the channel of the river, could not have been used against Mapes to his detriment by riparian owners on the opposite shore. We think the corollary of this rule is that Mapes could not thereafter use the slow and imperceptible movement of the river channel to the south whereby his lost land was restored to establish a riparian owner's right to claim accretion and thereby acquire the title of other owners south of him upon the restoration of their land, following its destruction, by this gradual movement of the river channel to the south. In

other words, it is our opinion that this sudden movement of the river in 1914 could not have affected title to the land in the northeastern quarter at that time and rectification of this move ought not to serve as the basis of accretion.

We think that the reliance of Neustadt on the equitable principles applied in the Hunzicker Case, and his reliance upon the ability to identify his land by government plat and survey following the restoration of his land, justified the trial court in rendering judgment in his favor. There is a sharp diversity of views among the opinions of the courts of this nation on the subject of accretion and the rule adopted by the South Dakota court in Allard v. Curran, 41 S.D. 73, 168 N.W. 761, followed by the later case of Erickson v. Horlyk, 48 S.D. 544, 205 N.W. 613, where the chief reliance for the rule adopted therein was upon the ability to identify according to government plat and survey was the basis for the Hunzicker Case. We believe it controls here.

The judgment appealed from is affirmed.

GIBSON, C. J., HURST, V. C. J., and RILEY, OSBORN, WELCH, CORN, and DAVISON, JJ., concur.