**The CHOCTAW AND CHICKASAW NATIONS, Plaintiffs,**

v.

**L. G. HERRON, Defendant.**

**Civ. A. No. 3716.**

United States District Court
E. D. Oklahoma.

April 14, 1955.

W. F. Semple, Tulsa, Okl., for plaintiffs.

Finney & Finney, Idabel, Okl., and Lloyd Story, Valliant, Okl., for defendant.

WALLACE, District Judge.

The plaintiff Indian Nations bring this action against the defendant, L. G. Herron, to recover possession of and quiet title to certain unallotted land allegedly ceded to plaintiffs by the United States.[1]

The land in contest (referred to herein as Tract 269½)[2] lies between the Red River, which bounds it on the south; and, the south line of the S/2 of the SE/4 of Section 10 which bounds it on the north. The 80 acres just mentioned, which is owned by the defendant, was allotted pursuant to plats based on the 1897 Government survey.[3] At the time of such survey a slender strip of unallotted land containing some 13 acres lay between the south line of the allotted 80 acres, and, the Red River to the south.[4] However, in 1903, at the

[1] The entire area in question was ceded to the Choctaw Nation by virtue of a treaty with the United States entered into at Dancing Rabbit Creek (See 7 Stat. 333) which grant was confirmed and evidenced by a patent issued on March 23, 1842. Plaintiff Chickasaw Nation acquired an undivided interest in the common domain so ceded on January 27, 1837.

[2] Said land contains 247.66 acres and is described as: "All land lying south of the S/2 of the SE/4 of Section 10, Township 8 South, Range 22 E.I.M. in McCurtain County, Oklahoma, described as follows, to-wit: Commencing at the Southeast corner of the S/2 of SE/4 of said Section 10, thence due South to the right cut bank of Red River, thence up stream following the right cut bank of Red River (the boundary between Texas and Oklahoma) to a point on the right

cut bank of Red River due South of the Southwest corner of the S/2 of SE/4 of said Section 10, thence north to the Southwest corner of the S/2 of SE/4 of said Section 10, thence East along the South boundary line of said S/2 of SE/4 of said Section 10 to the point of beginning.

[3] This allotted land (approximately 80 acres) was allotted as follows: Lot 1 (SW/4 of SE/4) to Siney Hall, full blood Choctaw Indian, Roll No. 13,513. Application for patent was made August 22, 1903; and, patent was issued December 12, 1904. Lot 2 (SE/4 of SE/4) to Ellis Taylor, full blood Choctaw, Roll No. 1856. Patent application dated October 27, 1903. Patent issued December 9, 1905.

[4] Under the 1897 survey there was a strip of land south of the south boundary of

time the patents to the two quarter sections making up the allotted 80 acres were obtained, the Red River had moved northward completing submerging the unallotted 13 acres; and, at such time the Red River constituted the southern limits of said 80 acres. From the time the patents were issued until the present time, the Red River has gradually moved toward the south withdrawing from the point where the unallotted land was situated; and, by accretion building up Tract 269½.

The single issue before the Court is whether Tract 269½ must be deemed to have accreted to the defendant's 80 acres by virtue of the total submerging of the plaintiffs' unallotted 13 acres and subsequent gradual receding of the River southward.

■ After careful study the Court has concluded that the submerging of plaintiffs' 13 acres did not divest plaintiffs of title to the land so as to make said area subject to being accreted at a later date to the 80 acres of defendant, originally nonriparian land.

■ Although there is a sharp conflict in the authorities dealing with the legal effect of the submersion of riparian land and the consequent destruction of boundary lines, the Oklahoma rule, and better reasoned rule, does not permit a subsequent accretion to land originally nonriparian where the boundary lines of the submerged land can accurately be re-established upon a withdrawal and receding of the river or stream.[5]

The rationale of the rule permitting accretion to land originally nonriparian, but made riparian by virtue of the total submerging of the land originally riparian, found its genesis in the fact that such submersion hopelessly destroyed all former boundary lines and it was impractical to ever again attempt to identify the boundaries of the submerged land.

However, where as in the instant case the unallotted land was accurately surveyed and the original lines can readily and accurately be re-established there is no reason either in law or equity why the owner of the submerged land is not entitled to reassert dominion over

the S/2 of the SE/4 of Section 10. South of the SE/4 of the SE/4 lay Lot 1, containing 11 acres; south of the SW/4 of the SE/4 lay Lot 2, containing 2.15 acres.

5. As observed in Hunzicker v. Kleeden, 1932, 161 Okl. 102, 17 P.2d 384, 385: "Under this state of facts, plaintiffs contend that, since the river by erosion cut away defendants' land and reached plaintiffs' land, and thereafter cut away a portion of plaintiffs' land so that plaintiffs were the riparian owners, then plaintiffs acquired the riparian rights to the river bed as against defendants, when the river receded. Upon this proposition of law there is a sharp conflict of the authorities. The courts of Connecticut and Kansas hold to the view contended for by plaintiffs, but, on the other hand, a number of our courts have held the contrary view, which is that, where the land of defendants is riparian property, and is gradually washed away by the stream, so that plaintiffs' land becomes riparian property, and that thereafter the stream recedes, then plaintiffs acquire only that portion of land which they had prior to said erosion by the stream, and defendants acquire such property as they had prior to the same being eroded away by said

stream. *We believe that the latter view is the more equitable and better view, where the boundaries are capable of determination.* * * * " (Emphasis supplied.) See Allard v. Curran, 1918, 41 S.D. 73, 168 N.W. 761; and Ocean City Association v. Shriver, 1900, 64 N.J.L. 550, 46 A. 690, 51 L.R.A. 425, which were relied on by the Oklahoma Court in the Hunzicker case. In Erickson v. Horlyk, 1925, 48 S.D. 544, 205 N.W. 613, where river had completely washed away lots belonging to defendant adjoining land of plaintiff, so that plaintiff became riparian owner, but thereafter river shifted and refilled all of land washing away so boundary lines could be re-established under the government survey, it was held defendant remained the owner. Cf. Mapes v. Neustadt, 1946, 197 Okl. 585, 173 P.2d 442. Contra, 41 A.L.R. 395 wherein annotator remarks: "The rule appears to be well established that if a tract of riparian land is entirely washed away, it is lost to the owner and he has no right to accretions to the land of another which extend within his original boundaries. And this is true even though the accretions are to land which was originally nonriparian." See original annotation in 8 A.L.R. 740.

the land once the river or stream withdraws.[6]

All accretion which has occurred in the area in controversy must be deemed to have attached to the plaintiffs' unallotted 13 acres and not to the allotted 80 acres owned by the defendant.

Plaintiffs are entitled to judgment.

Within 15 days counsel should submit a journal entry which conforms with this opinion.

---

6. As noted in the Hunzicker case, fn. 5, supra, 17 P.2d at page 386: "In the case at bar, plaintiffs' land was certain definite lots, capable of being ascertained in accordance with the surveys of said lots. When the river receded, the exact amount of land belonging to plaintiffs could be determined and located, and such land as existed beyond the boundaries of plaintiffs' land was not plaintiffs' land by right of accretion, but continued to be the land of the original owners thereof."