**Doris J. MIKEL, Plaintiff-Appellant,**

v.

**Robert S. KERR, Jr., et al., Defendants-Appellees.**

**Nos. 73-1665, 73-1776.**

United States Court of Appeals, Tenth Circuit.

July 19, 1974.

---

H. Clay Robinson of Pearce, Robinson & McCord, Fort Smith, Ark., for appellant.

Larry D. Patton of Tomerlin, High & Patton, Oklahoma City, Okl. (E. Norton Burbage, of Kerr, Davis, Irvine, Burbage & Green, Inc., Oklahoma City, Okl., on the brief), for appellees.

Before LEWIS, Chief Judge, DURFEE,* Senior Judge, and BARRETT, Circuit Judge.

DURFEE, Senior Judge.

This action was instituted to quiet title in a certain tract of land which lies at the confluence of the Arkansas and Poteau Rivers in Le Flore County, Oklahoma. Plaintiff, Doris J. Mikel, appeals from the District Court's entry of summary judgment in favor of defendants; she also appeals from the court's order taxing certain costs against her, in the amount of $389.00. These two separately-docketed appeals have been consolidated herein for the purposes of our review.

I

At the time of the United States Geological Survey of 1898, the property of defendants' predecessors in title was riparian to the Arkansas River. Subsequently, due to the gradual movement of the river, portions of the land were washed away or submerged, so that property presently owned by plaintiff came to border on the river. Still later, the river gradually receded in the direction from whence it had come, moving back to its 1898 position, and somewhat beyond. That portion of the Arkansas River adjacent to the property in question is navigable. Plaintiff claims title, by way of accretion, to the tract of land uncovered by the receding river; defendants claim the restored land as holders of record title, and they claim the land uncovered beyond the original boundaries of their property by way of accretion.

Upon the foregoing facts, the District Court held that, in Oklahoma, when riparian land reappears through reversal of the movement of a river, after having been inundated, ownership is restored in the record title holder of the land if its boundaries can be identified; accordingly, the court entered judgment for defendants.

The issue on appeal may therefore be clearly posed: when real property which is riparian and possessed of identifiable boundaries is submerged by the gradual movement of a river, and is then subsequently restored by the grad-

* Honorable James R. Durfee, Senior Judge, United States Court of Claims, sitting by designation.

ual recession of that river, does title to such property remain in the owner of record title, or does it vest, pursuant to the law of accretion, in an adjacent owner whose land was not originally riparian, but became riparian by the river's gradual movement?

A review of Oklahoma law on this issue establishes that the District Court was correct in holding that title to such reappearing land remained in the holder of record title, and therefore, that defendants were entitled to judgment.

The Oklahoma Supreme Court first addressed the issue herein presented in the case of Hunzicker v. Kleeden, 161 Okl. 102, 17 P.2d 384, 385 (1932), where it stated:

> * * * plaintiffs contend that, since the river by erosion cut away defendants' land and reached plaintiffs' land, and thereafter cut away a portion of plaintiffs' land so that plaintiffs were the riparian owners, then plaintiffs acquired the riparian rights to the river bed as against defendants, when the river receded.
>
> Upon this proposition of law there is a sharp conflict of the authorities. The courts of Connecticut and Kansas hold to the view contended for by plaintiffs, but, on the other hand, a number of our courts have held the contrary view, which is that, where the land of defendants is riparian property, and is gradually washed away by the stream, so that plaintiffs' land becomes riparian property, and that thereafter the stream recedes, then plaintiffs acquire only that portion of land which they had prior to said erosion by the stream, and defendants acquire such property as they had prior to the same being eroded away by said stream.
>
> We believe that the latter view is the more equitable and better view, where the boundaries are capable of determination. * * *

The Oklahoma Court was called upon to resolve the same issue in Mapes v. Neustadt, 197 Okl. 585, 173 P.2d 442 (1946). In that case, the initial movement of the river was by avulsion,[1] followed by a gradual recession of the river and consequent reappearance of the submerged property. Defendant in *Mapes*, the original owner of the property before it was submerged by the movement of the river, relied upon the equitable principles applied in *Hunzicker, supra*, and upon his ability to identify his land by Government plat and survey. The Oklahoma Court agreed with defendant that *Hunzicker* was controlling, and it rejected plaintiffs' claim, by way of accretion, to the restored land.

The Oklahoma Supreme Court once again reaffirmed its *Hunzicker* rule of reappearing riparian land in the case of Ford v. Harris, 383 P.2d 21 (Okl.1963). The facts in that case were identical to those in the case at bar in that the course of the stream gradually passed over all of defendant's land, and plaintiff's land then became riparian, and that after the gradual return of the course of the stream, defendant's land boundary was capable of determination. The court held, on the basis of *Hunzicker, supra*, that defendant continued to retain title to the reappearing land.

Plaintiff urges us to reject defendants' reliance upon the foregoing authority; she asks us to distinguish those cases on the basis of arguments hereinafter considered.

Plaintiff first attempts to bring the instant case outside the scope of *Hunzicker*'s application by arguing that *Hunzicker* and its progeny apply only in situations where a river has moved by avulsion. She contends that where the movement of the river is gradual, as in the instant case, the law of accretion, as codified in 60 O.S. § 335, and the Oklahoma decision in Goins v. Merryman, 183 Okl. 155, 80 P.2d 268 (1938), are dispositive.

1. Avulsion is defined as "[a] *sudden and rapid* change in the course and channel of a boundary river. Conkey v. Knudsen, 143 Neb. 5, 8 N.W.2d 538, 542." [Emphasis added]. Blacks Law Dictionary 173 (4th ed. 1951).

We are not persuaded that the rule of reappearing riparian land, as enunciated in *Hunzicker, supra,* is limited to cases where a river changes course by avulsion. The holding in *Hunzicker* embodies no such limitation. While the syllabus of the court speaks of the subsequent movement of the river therein involved as an "abandonment of the channel," a term usually used to denote avulsion, the text of the court's decision makes it clear that the rule therein announced applies whenever a river subsequently "recedes," uncovering land which was formerly riparian. Indeed, an examination of the authority relied upon and cited by the *Hunzicker* court establishes that Oklahoma embraced the rule that whenever riparian land reappears through a subsequent change in the course of a river, either by avulsion or by a river's gradual movement, ownership to the reappearing land, if it can be identified, is vested in the record title holder. *See* Allard v. Curran, 41 S. D. 73, 168 N.W. 761 (1918) and Keel v. Sutton, 142 Tenn. 341, 219 S.W. 351 (1920) (and cases cited therein), cited by the *Hunzicker* court, wherein the adopted rule is applied in instances of *gradual* reversal of a river's course; and *see* Stockley v. Cissna, 119 F. 812 (6th Cir. 1902), cited by the *Hunzicker* court, wherein the adopted rule is applied in instances of avulsion. This Circuit Court has recognized the *Hunzicker* rule as broader than the would-be rule espoused by plaintiff. In Herron v. Choctaw and Chickasaw Nations, 228 F.2d 830, 832 (10th Cir. 1956), it was stated:

> \* \* \* Whatever the rule may be elsewhere, it is the law in Oklahoma that where because of inroads of a river riparian land is lost by erosion or becoming submerged but through subsequent change in the course of the river the water disappears and the land reappears, and the boundaries are susceptible of being definitely identified, title to the restored land is vested in the owner of the fee at the time the erosion or submerging occurred. Hunzicker v. Kleeden, 161 Okl. 102, 17 P.2d 384; Mapes v. Neustadt, 197 Okl. 585, 173 P.2d 442. The latter case was one involving avulsion of a river, but the general rule applicable to cases involving erosion or submerging of land was clearly recognized with unqualified approval.

Furthermore, and perhaps most significantly, plaintiff proffers no satisfactory reconciliation of her interpretation of the *Hunzicker* rule and the Oklahoma Supreme Court decision in Ford v. Harris, *supra*. In *Ford*, as in the case at bar, the river *gradually* passed over all of defendant's land, plaintiff's land then becoming riparian, and there followed a *gradual* return of the course of the stream, with the consequent uncovering of defendant's land. The Oklahoma Court there held that the *Hunzicker* case was dispositive of the issue before it.

Plaintiff's reliance upon Oklahoma's law of accretion, 60 O.S. § 335, and the case of Goins v. Merryman, *supra*, is misplaced. Oklahoma has chosen not to apply its accretion statute to factual situations like the one before us. An examination of the *Goins* case reveals that the court therein based its decision upon facts which are completely different from those in the instant case; *Goins* is not applicable to the issue herein presented.

Plaintiff next asserts that a distinction is to be drawn on the basis of whether the river involved is navigable or non-navigable. According to plaintiff's theory, the application of the *Hunzicker* rule of reappearing riparian land is predicated upon the *non*-navigability of the river in question. She argues that since the Arkansas River is navigable where it is adjacent to the property here involved, *Hunzicker* does not apply.

The navigability of a waterway may be an important factor as far as certain rights of riparian owners are concerned. *See, e. g.,* United States v. Rands, 389 U.S. 121, 88 S.Ct. 265, 19 L.Ed.2d 329

(1967). We do not think, however, that it is a factor which is dispositive of the issue before us. The rule announced in *Hunzicker* was that riparian land lost by erosion or submergence is regained to the original owner when the land reappears due to the subsequent movement of the river. The Oklahoma Court believed this to be the more equitable and better view where the land boundaries are capable of determination. It is apparent that the *Hunzicker* court did not consider a river's non-navigability to be a prerequisite to application of the stated rule. In fact, while the court adopted and applied the stated rule to the facts before it, where the river was *non-navigable,* it pointed out that the caselaw in other states for and against the adopted rule dealt with *navigable* streams. The court relied upon, as authority, said caselaw supportive of the rule, and quoted therefrom with unqualified approval. The court in *Hunzicker* did state, by way of "further observation," that the river therein involved was non-navigable, but it did so only to establish the basis for an *additional* theory upon which to rest the result reached in the case. The court reasoned that because the bed of a non-navigable river belongs to the riparian owner, it followed that, where a portion of the riparian owner's land is eroded away or submerged, his title to said land continued to exist so long as any portion of that part of the land continued to exist as part of the river bed, so that when the river subsequently receded, the riparian owner still holds title to the restored land. The Oklahoma Court did not intend, as we read this part of its opinion, to thereby limit the application of its adopted rule of reappearing riparian land to situations where a river's non-navigability is established. This conclusion is persuasively supported by the fact that neither of the subsequent Oklahoma cases applying the rule adopted in *Hunzicker* mention whether the rivers involved were navigable or non-navigable. *See* Mapes v. Neustadt, *supra;* Ford v. Harris, *su-*

*pra.* Moreover, this Circuit Court did not consider as relevant the navigability *vel non* of the river in question in *Herron, supra,* where we disposed of the issue presented on the basis of *Hunzicker,* and *Mapes.*

In summary, where, due to the gradual movement of the Arkansas River, portions of defendants' land were washed away or submerged, so that plaintiff's property came to border on the river, and where the river later gradually reversed its course and moved in the direction from which it had come, title to the restored land remained with defendants where the boundaries to such land are capable of determination. Furthermore, as between plaintiff and defendants, the land uncovered beyond the original boundaries of defendants' property belongs to defendants as accretion to their property. Accordingly, plaintiff's claim to the land in question, by way of accretion, must be rejected. *Hunzicker* and its progeny demand this result.

## II

Plaintiff also appeals from the District Court's order taxing certain costs against her, in the amount of $389.00. The costs in controversy relate to expenses incurred by defendants in the preparation of exhibit "C", an attachment to the parties' stipulation of facts. The exhibit is a plat of the United States Geological Survey, dated November 2, 1898, which correctly reflects the location of the Arkansas River in relation to the real property which is at issue in this lawsuit. Plaintiff's objection to paying the costs of preparing said exhibit is that it was not used by the trial court in making its decision.

■■ The reasonable cost of preparing maps, charts, graphs and kindred material is taxable, pursuant to 28 U.S. C. § 1920, when necessarily obtained for use in the case. Advance Business Systems & Supply Co. v. SCM Corp., 287 F. Supp. 143 (D.Md.1968), aff'd and re-

manded on other grounds 415 F.2d 55 (4th Cir. 1969), cert. denied 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970). Whether an item is necessarily obtained for use in a case so that expense therefore may be taxed as a cost calls for a factual evaluation, a task which is committed to the discretion of the trial court. *See* United States v. Kolesar, 313 F.2d 835 (5th Cir. 1963).

After the demise of District Judge Edwin Langley, who had entered summary judgment for defendants, the task of determining whether the exhibit in question was necessarily obtained for use in the case fell upon District Judge Fred Daugherty. Judge Daugherty found that the exhibit in question was made a part of the parties' stipulation of facts, upon which Judge Langley entered summary judgment; that the exhibit was a result of defendants' expenditures or fees for exemplification and copies of papers which they request to be taxed as costs; that the aerial photograph for which fees are claimed by defendants is a part of the exhibit as is other material obtained by defendants for which fees are claimed; that time consumed in obtaining the necessray aerial photos and other material and causing them to be put together to illustrate the location of the Arkansas River in relation to the real property in dispute appeared to be a reasonable and a proper charge for costs under 28 U.S.C. § 1920(4); and that Judge Langley refers to this exhibit and material in his Memorandum of Decision. The District Court found and concluded that this exhibit was necessarily obtained for use in the case, was in fact used, and that the fees for such exemplification and copies of papers were taxable as costs under 28 U.S.C. § 1920(4). We are unable to conclude, in view of these circumstances, that the District Court abused its discretion in allowing the taxation of these costs, in the amount of $389.00, against plaintiff.

The judgment of the District Court is affirmed.