### The CHOCTAW AND CHICKASAW NATIONS, Plaintiffs,

v.

### Tom Frank TIBBETTS, Executor of the Estate of Ella M. Tibbetts, Deceased, and Tom Frank Tibbetts, Defendants.

### No. 5649.

United States District Court, E. D. Oklahoma.

Jan. 19, 1976.

W. F. Semple, Tulsa, Okl., Lon Kile, Hugo, Okl., for plaintiffs.

Brad D. Jesson, Fort Smith, Ark., George H. McBee, Poteau, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

In this case the Plaintiffs Choctaw and Chickasaw Nations bring suit to quiet title in and to lands situated in the Northwest Quarter of Section 12, Township 9 North, Range 25 East of the I.B.M., LeFlore County, Oklahoma. Originally other lands were

involved in the suit but at the Pre-Trial Conference conducted herein and as shown by the Pre-Trial Order filed herein on December 15, 1975, the Plaintiffs dropped these claims as to lands outside the Northwest Quarter of Section 12, *supra*, and the parties involved therewith from this suit and all agreed that this suit was thereupon limited for decision to the Northwest Quarter of Section 12, *supra*.

The parties involved in the Northwest Quarter of Section 12 are the Plaintiffs and the remaining Defendants, namely, Tom Frank Tibbetts, Executor of the Estate of Ella M. Tibbetts, deceased, and Tom Frank Tibbetts (Tibbetts). After the Pre-Trial Conference these parties submitted trial briefs at the request of the Court. The case was then set for trial. At the trial herein, the Plaintiffs and the remaining Defendants Tibbetts submitted the case to the Court for decision on a stipulation of facts dictated into the record in open Court, their trial briefs aforesaid and oral arguments then received by the Court.

The parties stipulated that in the Northwest Quarter of Section 12 the Plaintiffs own as unallotted tribal land (acquired by Treaty grant) the West 13.15 acres of Lot 1 and the West 12.50 acres of Lot 2; that the Defendants Tibbetts and their predecessors in title own or owned (by allotment grant from Plaintiffs) the East 20 acres of Lot 1 and the East 20 acres of Lot 2 in said Quarter Section; that according to the Official Survey of 1897 the East bank of the Arkansas River was located adjacent to Plaintiffs land aforesaid making Plaintiffs then a riparian owner of lands as to this river in said Quarter Section; that by accretion said river moved over the years to the East and by 1927 had submerged all of the Plaintiffs' land aforesaid and most of Defendants' land aforesaid; that in 1927 by avulsion said river moved from the land in said Northwest Quarter of Section 12, in a northwesterly direction and all of Plaintiffs' and all of Defendants' land in said Quarter Section which had been submerged then re-emerged or surfaced as dry land; that following such avulsive movement the boundaries of Plaintiffs' and Defendants' land in said Quarter Section were identifiable and capable of determination; that any decisions of the Court herein are limited to lands and rights in the Northwest Quarter of Section 12, will not be res judicata or constitute collateral estoppel as to any other lands or rights and that any controversy between the parties herein within said Quarter Section as to rents or profits is not for decision herein and such issue will not be res judicata or constitute collateral estoppel as to the parties herein.

It had been the contention of Plaintiffs as shown by their Complaint herein and the said Pre-Trial Order that under the facts of this case they are the owners of Defendants' land in said Quarter Section under the legal principles of river accretion (to the East) and river avulsion (back to the West and North). However, at the trial herein, Plaintiffs requested the Court to only quiet title in them in and to their unallotted tribal land in Lots 1 and 2 in said Quarter Section as above described. By Cross Complaint (Counterclaim) filed herein and as shown by the Pre-Trial Order herein Defendants Tibbetts contended that they are the owners of all of the land in said Quarter Section by virtue of the facts of this case. However, at the trial herein the Defendants Tibbetts waived any claim to Plaintiffs' unallotted tribal lands in Lots 1 and 2 in said Quarter Section and requested the Court to only quiet title in them in and to their lands in said Lots 1 and 2 in said Quarter Section as above described.[1]

██ It appears from the Briefs of the parties and comments made at the trial that both sides contend that this controversy is governed by the law of the State of Oklaho-

---

1. At the trial Defendants also abandoned a contention earlier made that they had acquired title to Plaintiffs' land in said Lots 1 and 2 under the doctrine of adverse possession. See *McGannon v. Straightledge*, 32 Kan. 524, 4 P. 1042 (1884) and 55 ALR 2d 576 which indicate that one cannot acquire title to Indian lands by adverse possession.

ma.[2] But it is not necessary to determine if this dispute is governed by State or Federal law as the pertinent law of both sovereigns is the same under the facts of this case. The universally recognized law of accretion provides that when a river gradually and imperceptibly moves, the riparian owners may lose or gain land as a result of such movement. Oklahoma has codified this rule of law.[3] When prior to 1927 the Arkansas River moved by accretion to the East Plaintiffs' land in Lots 1 and 2 of said Quarter Section eventually became completely submerged under water and remained in such condition until the avulsive[4] movement of 1927. Defendants' land in Lots 1 and 2 of said Quarter Section also became completely submerged by such accretion to the East except for possibly the Northeast tip of Lot 1 and remained in such condition until the avulsive movement of 1927. By the avulsive movement of the river in 1927 all of the land of the Plaintiffs and Defendants in said Quarter Section completely re-emerged or surfaced as dry land. The parties have stipulated that following such re-emergence or surfacing the boundaries of their said lands in said Quarter Section were capable of determination.

■ In the recent case of *Mikel v. Kerr*, 499 F.2d 1178 (Tenth Cir. 1974) our Circuit applied the law of Oklahoma regarding the principle of accretion and the doctrine of re-emergence. The case involved a river moving by accretion in one direction and then reversing such movement by accretion in which reverse process the lands earlier submerged surfaced or re-emerged as dry lands. The Court stated that Oklahoma law in these circumstances is to the effect that upon re-emergence of the submerged lands, title thereto was restored in the original record title holders, if the boundaries thereof following re-emergence were capable of identification or determination. This principle of law has been referred to as the doctrine of re-emergence. See *Herron v. Choctaw and Chickasaw Nations*, 228 F.2d 830 (Tenth Cir. 1956) and *Bonelli Cattle Co. v. Arizona*, 414 U.S. 313, at page 330, 94 S.Ct. 517, 38 L.Ed.2d 526 (1973) at Note 27. The *Mikel* case is similar to the case at bar except in the case at bar the reverse movement of the river was by avulsion rather than accretion. This difference was discussed in *Mikel* with the determination that under Oklahoma law the result would be the same in either instance, citing *Hunzicker v. Kleeden*, 161 Okl. 102, 17 P.2d 384 (1930) and *Mapes v. Neustadt*, 197 Okl. 585, 173 P.2d 442 (1946).[5] In this connection the *Mikel* case holds:

"  .  .  . Indeed, an examination of the authority relied upon and cited by the *Hunzicker* court establishes that Oklahoma embraced the rule that whenever riparian land reappears through a subsequent change in the course of a river, either by avulsion or by a river's gradual movement, ownership to the reappearing land, if it can be identified, is vested in the record title holder."

The Federal rule appears to be identical. In *Bonelli Cattle Co. v. Arizona, supra,* in which Federal law was applied, a navigable river moved by accretion in one direction with the law of accretion above set out applying and the river later moved back by avulsion (a man-made rechannelization but nonetheless an avulsion) with earlier submerged lands surfacing as dry land and the Court held:

the owner of the bank, subject to any existing right of way over the bank."

**2.** The case of *Herron v. Choctaw & Chickasaw Nations*, 228 F.2d 830 (Tenth Cir. 1956) so holds.

**3.** 60 Oklahoma Statutes § 335 provides as follows:

"Where from natural causes land forms by imperceptible degress upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to

**4.** Avulsion is defined as a sudden and rapid change in the course and channel of a boundary river. See Note 1, *Mikel v. Kerr*, 499 F.2d 1178 (Tenth Cir. 1974).

**5.** The Syllabus by the Court in *Mapes* provides:

"Changes in riparian status by reason of avulsion does not work a change in boundaries."

". . . . Now that the land has resurfaced in the process of rechannelization, it should return to the state of the riparian owner." [27]

[27] "Under the doctrine of re-emergence, when identifiable riparian land, once lost by erosion, subsequently re-emerges as a result of perceptible change in the river course, title to the surfaced land revests in its former owner. See *Arkansas v. Tennessee*, 246 U.S. [158] at 174–175, 38 S.Ct. 301, 62 L.Ed. 638; *Beaver v. United States*, [9 Cir.], 350 F.2d [4] at 11. The re-emergence doctrine has been accepted by a number of States, *Herron v. Choctaw & Chickasaw Nations*, 228 F.2d 830 (CA 10 1956) (applying Oklahoma law); *State v. Gill*, 259 Ala. 177, 66 So.2d 141 (1953); *Esso Standard Oil Co. v. Jones*, 233 La. 915, 98 So.2d 236, aff'd on rehearing, 233 La. 940, 98 So.2d 244 (1957); *Mulry v. Norton*, 100 N.Y. 424, 3 N.E. 581 (1885)."

Under the stipulated facts herein and the applicable law (under both State and Federal law) the title should be quieted in Plaintiffs in and to the West 13.15 acres of Lot 1 and the West 12.50 acres of Lot 2 all in the Northwest Quarter of Section 12, Township 9 North, Range 25 east of the I.B.M. and title should be quieted in Defendants in and to the East 20 acres of Lot 1 and the East 20 acres of Lot 2 all in the Northwest Quarter of Section 12, Township 9 North, Range 25 East of the I.B.M. A Judgment should be entered herein in accordance with this Memorandum Opinion.

