**Walter N. HODGDEN and Norma Hodgden, husband and wife, Appellants,**

v.

**Frederick KLIEWER et al., Appellees.**

**No. 47785.**

Supreme Court of Oklahoma.

Nov. 16, 1976.

Rehearing Denied Dec. 20, 1976.

Hieronymus, Hodgden & Halley by Tom Hieronymus, Bryce Hodgden, Duke Halley, Woodward, for appellants.

Joe C. Houk, Houk & Houk, Fairview, for appellees, Frederick Kliewer, Bertha Kliewer and Herbert Kliewer.

John R. Robertson, Jr., George, Kenan, Robertson & Lindsey, Oklahoma City, for appellee, Kirkpatrick Oil and Gas Co.

George H. Bowen, Tulsa, for appellee, Tulsa Royalties Co.

BARNES, Justice:

This appeal involves the ownership of land riparian to surveyed lots located on the north and south sides of the nonnavigable Cimarron River, as it traverses the area forming the boundary line between Woods and Major Counties, Oklahoma, and all accretions to the lands lying between the southern boundary of said lands as originally surveyed and plotted south to the center of the Cimarron River as it presently exists.

Appellants, Walter N. Hodgden and Norma Hodgden, husband and wife, were plaintiffs in the Trial Court, and Appellees, Frederick Kliewer and Bertha Kliewer, husband and wife, Edwin Headrick and Kirkpatrick Oil and Gas Company, a corporation, were defendants in the Trial Court.

Appellees Kliewer owned land lying on the south side of the river in Major County, Oklahoma, and Kirkpatrick Oil and Gas Company is the holder of oil and gas leases on the Kliewers' land. Appellee, Tulsa Royalties Company, is the owner of an undivided interest of minerals lying on the south side of the river.

On the date of trial, Appellants owned:

Lot 6 in Section 11,

Lots 5, 6, and 7 in Section 2,

all in Township 22 North, Range 13 W.I.M., Woods County, Oklahoma.

Appellees Kliewer owned:

Lots 1, 2, 3, 4, and 5 in Section 11,

Lots 1 and 2, in Section 12,

all in Township 22 North, Range 13 W.I.M., Major County, Oklahoma.

Appellee Headrick acquired:

Lots 5 and 6 of Section 12,

Lots 5 and 6 of Section 1,

Township 22 North, Range 13 W.I.M.

After inception of this suit, but prior to actual trial, Appellee Headrick sold to appellee Kliewer his right and interest in the land purportedly owned by him.

At the time of the original United States Government Survey in 1873, the Cimarron River was approximately ½ to ¾ mile in width between the lots as surveyed. Subsequently, the river moved along the northern area of the original survey within its banks and in 1934 Appellants' and Appellees' predecessors in title were involved in a suit in the District Court of Major County, styled *"Robert A. Mitchell, Plaintiff,*

*vs. John Meyer, Ella Hodgden, et al., Defendants"*, No. 4489, involving a portion of the lands now in dispute. In that unappealed judgment the Trial Court held the river moved north by the gradual process of accretion, thereby adding sedimentary and alluvial deposits to the lands owned by Appellees and Kliewers' predecessors in title.

Thereafter, the river moved north to a channel where it was located, as shown by the survey of A. E. Drechsler (Appellants' Exhibit 12), which shows the bend in the river, described throughout the trial as "the hump" area.

Subsequently, in 1954, Drechsler prepared another survey showing the river's changed location as a result of a flood in May, 1952. From its location in 1952 to its location in 1970 the river moved south, where it remains at the present time.

The location of the river in 1873, 1950, and 1954, for the purposes of this appeal, is shown by the following plat:

R13W.I.M

T22N.

CIMARRON RIVER

LEDGEND

1873 CHANNEL ——————

1950 CHANNEL – – – – – – –

1954 CHANNEL ....................

The issue between Appellants and Appellees Kliewer is who is the owner of the land lying north of the Cimarron River as it presently exists in an area and which is referred to as "the hump". The second issue between the parties is who owns Lots 5 and 6 in Section 1 and Lots 5 and 6 in Section 12.

Both Appellants and Appellees (excepting Appellee Herbert Kliewer) claim to own the "hump" lands. Both Appellants and Appellee Herbert Kliewer claim to own Lots 5 and 6 in Section 1, Township 22 North, Range 13 West, and Lots 5 and 6 in Section 12, Township 22 North, Range 13 West.

The issues raised by Appellants' and Appellees' claims of ownership require an analysis of prior case law, the processes of accretion and avulsion, and the elements of adverse possession.

In the case at bar, the Cimarron River between 1936 and 1950 moved further north in Sections 1 and 2, destroying Lots 6 and 7 and a portion of the N/2 of SE/4 of Section 2 and Lots 5 and 6 and the N/2 of SW/4 of Section 1. In 1952, the river in one flood went back into its original channel and near the south side of said original channel where it has remained to date. The land and lots in Sections 1 and 2 were restored after the flood in 1952.

The Trial Court found, after hearing all the evidence, that (1) the river moved north by gradual and imperceptible processes of accretion, adding such accreted land to the riparian lots on the south bank of the river; (2) the river, when at its northernmost point, which is the northernmost point of the "hump", moved south by the process of avulsion during the flood of May, 1952, thereby cutting a new channel on the south side of the "hump" and immediately north of Lots 1 and 2 in Section 12, and Lots 1, 2, 3, 4, and 5 in Section 11, all in Township 22 North, Range 13 West; (3) the avulsive processes did not affect ownership of any of the "hump"; and (4) the Appellants failed to prove the required elements of adverse possession necessary to divest Appellees Kliewer of their ownership of the "hump" lands for the principal reason that Appellants' possession was neither exclusive nor hostile, notorious, open, absolute, or continuous for the required statutory period.

Appellees submit that where the process of accretion has been established by judicial determination and judgment vesting title to 308.03 acres of accretion lands forming part of the "hump" in Appellees Kliewers' predecessors in title, *Mitchell v. Meyers*, supra, such determination is conclusive and the process of accretion may be presumed to continue unless by clear and convincing evidence such presumption is rebutted; that the 1952 avulsive change did not disturb the ownership of the land prior to 1952, and that Appellees' title has not been divested to the "hump" lands, nor Appellants' title thereto established by adverse possession. Accordingly, Appellees pray confirmation of the judgment entered in the Trial Court.

It is Appellants' position that the river moved to its location in 1950 by avulsion and back by avulsion; that, in fact, since the river had moved north and then back to its original position within its 1873 Survey, no change within the boundary limits had occurred, even if the movement north was by accretion and the movement back south by avulsion.

Appellants urge in Proposition I that when land adjoining a river is lost through the movement of a river and the river later recedes to its original channel, the original owner is restored. In support thereof Appellants cite *Mikel v. Kerr*, 499 F.2d 1178 (10th Cir. 1974); *Herron v. Choctaw and Chickasaw Nations*, 228 F.2d 830, 832 (10th Cir. 1956); *Hunzicker v. Kleeden*, 161 Okl. 102, 17 P.2d 384; *Mapes v. Neustadt*, 197 Okl. 585, 173 P.2d 442; *Ford v. Harris*, 383 P.2d 21 (Okl.1963); and *Bonelli Cattle Company, et al., v. State of Ar-*

*izona, et al.,* 414 U.S. 313, 94 S.Ct. 517, 38 L.Ed.2d 526.

Although the view contended for by the Appellants was apparently endorsed by the Court of Appeals for the Tenth Circuit in *Herron v. Choctaw and Chickasaw Nations, supra,* and *Mikel v. Kerr, supra,* in each of those cases the facts were that the river had moved by accretion in both directions. There is no question about this being the Oklahoma law where the river has moved in both directions by accretion, *Hunzicker v. Kleeden, supra.* The misunderstanding in these two cases of Oklahoma law expressed in dicta seems to stem from a misinterpretation of this Court's opinion in *Mapes v. Neustadt, supra.* There the river first moved by avulsion north across Lots 3 and 4, which were never patented to anyone, and also across part of the NE/4 (Mapes' land) so that Mapes' land became riparian to the river. Subsequently, the river by accretion moved back south, restored Lots 3 and 4, destroyed Lots 5 and 6, and then restored them. Thus, there was first movement by avulsion and then by accretion. The Court held that where a river has first moved by avulsion, it will not change the boundary of the river. Subsequent movement of the river by the process of accretion was ignored insofar as it might have changed the ownership of riparian land.

■ Appellants further contend that the Trial Court erred in finding that the Appellants had not established, by a preponderance of the evidence, that the "hump" lands were possessed by any party to the extent necessary to rise to the dignity of that possession necessary to perfect ownership by adverse possession. In order to establish title by adverse possession, proof must be clear and positive on constituent elements of actual, open, notorious, exclusive and hostile possession for statutory period. *Colson v. Hall,* 206 Okl. 687, 246 P.2d 339 (1952). We agree with the Trial Court that the Appellants have not met that test. The testimony, when taken as a whole, did not clearly and positively show exclusive and hostile possession on the part of the Appellants.

■ Appellants also contend, citing 60 O.S.1961 § 336, that Appellees Kliewer cannot claim land lost by avulsion after fifteen years. Section 336 provides:

"If a river or stream carries away, by sudden violence, a considerable and distinguishable part of a bank, and bears it to the opposite bank, or to another part of the same bank, the owner of the part carried away may reclaim it within a year after the owner of the land to which it has been united takes possession thereof."

In *Nolte v. Sturgeon,* 376 P.2d 616 (Okl.1962), we said, concerning 60 O.S. § 336, supra:

"The provision of this statute has never been interpreted by this Court to be a one-year statute of limitation. In fact, we have stated that a party claiming disputed land, about which the doctrine of avulsion has been found to be applicable, must show that he has had actual, exclusive and uninterrupted possession of the land for fifteen years, and that he went into possession and held possession under claim of title. *Willett v. Miller,* 176 Okl. 278, 55 P.2d 90. . . . Plaintiffs in error in the instant case failed to make such a required showing and therefore the trial court was correct in ruling against them on their claim of alleged title by prescription. *Porter v. Herron,* Okl., 295 P.2d 772."

Appellants finally contend that the journal entry of judgment of the Trial Court is incomplete with respect to ownership of Lots 5 and 6 in Section 12. The Trial Court's decision that Lots 5 and 6 in Section 12 are owned by Appellee Headrick is apparently based on the Trial Court's finding that the Appellants have failed to show exclusive, hostile adverse possession of any of Lots 5 and 6. We agree with the Trial Court's finding, and the judgment is affirmed.

WILLIAMS, C, J., HODGES, V. C. J., and DAVISON, BERRY, LAVENDER and SIMMS, JJ., concur.

DOOLIN, J., dissents.

DOOLIN, Justice (dissenting):

We agree with the statement of facts in the majority opinion and they are not an issue.

The majority opinion however, overlooks rights hereafter described and previously protected by this court, rights to "reappearing riparian lands." Were it not for such cases as *Mapes v. Neustadt*, 197 Okl. 585, 173 P.2d 442 (1942); *Mikel v. Kerr*, 499 F.2d 1178 (10th Cir. 1974); *Ford v. Harris*, 383 P.2d 21 (Okl.1963) and *Hunzicker v. Kleeden*, 161 Okl. 102, 17 P.2d 384 (1932), the majority view would undoubtedly be a correct application of the law. The pertinent statutes provide:

60 O.S.1971 § 335: Riparian accretions: Where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank.

60 O.S.1971 § 336: Removals in mass may be reclaimed: If a river or stream carries away, by sudden violence, a considerable and distinguishable part of a bank, and bears it to the opposite bank, or to another part of the same bank, the owner of the part carried away may reclaim it within a year after the owner of the land to which it has been united takes possession thereof.

The above mentioned cases stand for the proposition Oklahoma, even in the face of these statutes, has heretofore applied the "reappearing riparian lands doctrine" to riparian lands where the original boundaries of a river can be identified from an existing governmental survey (old channel).[1] In my opinion the *Mikel* case and *Mapes v.*

*Neustadt*, supra, in applying this doctrine, make no distinction between land acquired by accretion or by an avulsion. *Mapes* says at 173 P.2d page 443:

"We think the corrollary of this rule is that Mapes could not thereafter use the slow and imperceptible movement of the river channel to the south whereby his lost land was restored to establish a riparian owner's right to claim accretion and thereby acquire the title of other owners south of him upon the restoration of their land, following its destruction, by this gradual movement of the river channel to the south. In other words it is our opinion that this sudden movement of the river in 1914 could not have affected title to the land in the northeastern quarter at that time and rectification of this move ought not to serve as the basis of accretion."

Careful reading of the *Mapes* case and examination of the record therein, indicate the *Mapes* land, although not riparian at the time of the survey in the 1870's, was riparian at the time of entry and at the time of issuing the patent thereto.

*Mapes* presented a situation wherein his claim to accreted land was based on a situation nearly identical to that of defendants Kliewers. *Mapes* was claiming land, by accretion, as do the Kliewers, to the center of the present existing channel. In *Mapes* we held his claim was good only to the center of the old channel as fixed in the United States governmental survey in the 1870's, because the boundaries of this channel were easily ascertainable. This is the result that should be obtained here, i. e. Kliewers should be granted title to accretions to their lands only to the center of the old channel and not beyond.

I conclude the majority simply adds confusion to this most difficult problem by not clearly accepting or overruling the *Mapes* doctrine as espoused by the 10th circuit in *Mikel v. Kerr*, supra. I believe the "reappearing lands" doctrine is more equitable,

1. *Mikel v. Kerr*, 499 F.2d 1178 (10th Cir. 1974).

particularly for a river where an untrained observer can detect the meanderings and changes of banks within the old channel with comparative ease. Location of the boundaries is likewise in my opinion, a simple task of carrying "direction and distance" to an identifiable point on the ground from a United States governmental survey.

We think the doctrine of "reappearing lands" is also conducive to the stability of titles along the wild Cimarron.[2] Its retention or adoption would lessen or curtail quiet title actions such as this and the one had in 1934, covering a part of these same lands.

I dissent.

2. Cimarron means runaway, wild or unruly. The origin of the name as applied to the river is generally considered to be of Spanish derivation, from Rio de los Carneros Cimarron, or "River of the Wild Sheep." Shirk, *Oklahoma Place Names* 2d ed. (University of Oklahoma Press 1974) ; Simon and Shusters International Dictionary (1973) Edna Ferber, *Cimarron* (Doubleday 1951).